**STATE of Missouri, Respondent,**

v.

**Scott D. WALLACE, Appellant.**

**Nos. WD 51127, WD 52430.**

Missouri Court of Appeals,
Western District.

Feb. 25, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 1, 1997.

Application to Transfer Denied
May 27, 1997.

David Simpson, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Jefferson City, Philip M. Koppe, Assistant Attorney General, Kansas City, for respondent.

Before SMART, P.J., and SPINDEN and ELLIS, JJ.

ELLIS, Judge.

Scott D. Wallace appeals from his conviction by jury of assault in the first degree, § 565.050.1,[1] and subsequent denial of his Rule 29.15 motion for post conviction relief. Wallace was sentenced to a seven year term of imprisonment.

We state the facts in the light most favorable to the verdict. Late in the evening of July 26, 1994, Wallace unexpectedly drove up to the trailer home of Mary Collins in Bates City, Missouri. Wallace had been living with Collins for about ten years and had three children with her. However, a few days before, Wallace had agreed to honor Collins' request that he stay away for a week to give her "time to think." Collins recognized the sound of Wallace's pick-up truck when he drove up, and when Wallace failed to get out of the truck after several minutes, Collins went outside to see what he was doing. She found Wallace lying across the front seat of the truck, smelling of alcohol. When Collins asked what he was doing there, Wallace told her that he "had made a fool out of himself." Collins asked Wallace to leave, but he continued to lie on the seat.

---

**1.** All statutory references are to RSMo 1994 unless otherwise noted.

Collins' sister, Shawn Norman, was in the trailer watching a movie with Collins when Wallace drove up. After Collins failed to convince Wallace to leave, Norman went out and asked him to leave. When he refused, Norman went back into the trailer and locked the door.

Shortly thereafter, Wallace entered the trailer using his key. He noisily began to prepare himself some food. When Norman told him to "quiet down," Wallace told her it was his trailer and he could do whatever he wanted. About fifteen minutes later, Wallace went to his bedroom and laid down on the bed. When Wallace got up to go to the bathroom, Collins went into the bedroom and took Wallace's gun from under the bed. Collins then concealed the gun between the cushions of the living room couch.

When Wallace came out of the bathroom, he went into the living room and laid down on the couch. Collins and Norman again asked him to leave. Wallace refused and asked Collins to talk with him in the bedroom. Collins went with Wallace into the bedroom and sat down on the bed. Wallace knelt before her and asked her if their relationship was over. Collins told him it was. Wallace repeated his question, and Collins repeated her answer. Wallace then grabbed her by the throat, forced her to the floor, and began choking her. Collins tried to scream for her sister, but gasped for air instead. Eventually, Collins passed out "for a little bit." When she regained consciousness, Collins again screamed for her sister.

Norman heard the scream, grabbed the gun, and kicked open the bedroom door. Inside, she saw Wallace straddling Collins with his hands around her throat. Norman screamed at Wallace. Wallace turned, saw Norman, and lunged for the pistol. Norman fired the gun once and backed down the hallway. When Wallace followed her, she fired two more shots, one of which struck Wallace in the shoulder. Norman turned to run, and Wallace tackled her.

At that point, Collins climbed on Wallace's back, trying to pull him off her sister. Wallace managed to take the gun from Norman. Wallace then looked at Collins and said, "Mary, Mary, you got me. I'm hit. I'm out

of here." Collins ran out the back door to a neighbor's house. Wallace ran out after her and yelled, "Mary. I love you. Mary, we can work this out." Wallace then threw the gun under the trailer, got into his truck, and drove away.

Wallace's mother drove him to a hospital in Independence for treatment. While there, he was interviewed by a Lafayette County sheriff's deputy. Wallace told the deputy he and his "wife" had become embroiled in a "verbal confrontation, at which time he had grabbed her by the throat and took her to the ground and was choking her." He said he was "over the top of her" when her sister came in and shot at him. He told the deputy that he then stood up and started for Norman, and she shot him in the shoulder. Wallace said he was able to get the gun away from her and throw her across the room.

Wallace was charged with assault in the first degree in violation of § 565.050.1. On March 21, 1995, he was tried in the Circuit Court of Lafayette County and found guilty by a jury. On May 1, 1995, he was sentenced to a seven year term of imprisonment. Wallace timely file a *pro se* Rule 29.15 motion for post conviction relief, which was subsequently amended by appointed counsel. That motion was denied by the trial court.

Wallace raises three points on appeal. In his first point, he claims the trial court abused its discretion in allowing into evidence testimony and exhibits relating to five instances of prior abuse of Collins by Wallace. He argues this evidence should have been excluded as evidence of prior bad acts and that its prejudicial effect outweighs any probative value.

During its case in chief, the State was allowed, over continuing objection by the defense, to present the following testimony from Collins:

1. In 1985, while Wallace and Collins were in bed, Wallace got mad at Collins for something she said, grabbed her around the throat, they "wrestled for a little bit, and then it was over."

2. In 1987, Wallace and Collins got into an argument, and Wallace blackened her eyes.

3. In 1990, Wallace and Collins got into an argument in the car, and Wallace "backhanded" her and gave her a bloody lip. Later, Wallace punched the bathroom door and tore a mirror off the dresser.

4. In 1992, Collins came home late and woke Wallace. Wallace had been drinking. Wallace accused Collins of "being out with someone" and started hitting her. He injured her wrist and gave her two black eyes. Wallace and Collins went to stay in a hotel so nobody would see her. Photos taken of Collins' at this time were also admitted by the trial court.

5. In 1993, Collins "messed around on Wallace." After that, Wallace "lost control more often." On one occasion, Wallace pushed her down, choked her to where she "saw stars," hit her, and wrestled her to the floor. Wallace tape-recorded this incident, and at trial, the court allowed the tape to be played to the jury.

Evidence of separate and distinct crimes or bad acts are generally not admissible for the purpose of showing that the defendant is a bad person or has a propensity to commit acts of that nature. *State v. Clover*, 924 S.W.2d 853, 855 (Mo. banc 1996). "When not properly related and logically relevant to the crime at issue, the introduction of other crimes evidence violates the defendant's right to be tried only for the offense for which he is charged." *Id.* "Evidence of prior misconduct of the defendant, although not admissible to show propensity, is admissible if the evidence is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial . . . and if the evidence is legally relevant, in that its probative value outweighs its prejudicial effect." *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). The balancing of the effect and value of the evidence lies within the sound discretion of the trial court, and we will not interfere absent a clear showing of abuse of that discretion. *Id.*

■ Generally speaking, evidence of prior bad acts is logically relevant if it tends to establish: (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan, or (5) identity. *State v. Cole*, 887 S.W.2d 712, 714 (Mo.App. E.D.1994). The prior acts of abuse presented by the State tend to show Wallace has intended harm to Collins in the past, which might be logically relevant to discredit any assertion by Wallace of accident or self-defense. However, Wallace never claimed accident or self-defense. He never denied attacking Collins. Evidence of bad acts or uncharged crimes is only admissible "if it is highly relevant to a legitimate issue in the case." *State v. Douglas*, 917 S.W.2d 628, 630 (Mo.App. W.D.1996).

■ The only argument offered by the State at trial for placing this evidence before the jury was to show Wallace intended "serious physical injury," rather than less than serious physical injury. To this end, most of this evidence can be considered marginally probative at best. The first four instances testified to by Collins resulted in only minor injuries. Legal relevance needs "to be resolved in light of the consideration that the inevitable tendency of such evidence is to raise a legally spurious presumption of guilt in the minds of the jurors." *Clover*, 924 S.W.2d at 856. What little probative value the evidence surrounding these four instances might have on the issue of Collins' intent is strongly outweighed by their prejudicial effect. The trial court abused its discretion in allowing this testimony into evidence.

■ The evidence regarding the fifth instance bears more consideration. On that occasion, Wallace beat Collins and choked her to the point of unconsciousness when he learned she had had sex with another man. Given the similarity of the fifth instance and its proximity in time to the incident at bar, we find Collins' testimony about this instance to be logically relevant in establishing Wallace's intent to inflict serious bodily harm. Similarly, his pattern of abuse subsequent to this fifth incident is proximate and may be relevant to rebut a claim of accident or in demonstrating a pattern of intentional infliction of abuse that eventually culminated in a physical assault with the intent to cause serious physical injury. *State v. Post*, 901 S.W.2d 231, 236 (Mo.App.1995).

■ However, "[i]n order for intent or the absence of mistake or accident to serve as

the basis for admission of evidence of similar uncharged crimes, it is necessary that those be legitimate issues in the case." *State v. Conley*, 873 S.W.2d 233, 237 (Mo. banc 1994). In its case-in-chief, the prosecution presented testimony from two witnesses that the defendant grabbed Collins and choked her into unconsciousness. The prosecution also presented evidence that Wallace admitted choking Collins to a police officer. Where, as here, the State presents direct evidence that the defendant committed the act charged, the proof of the act ordinarily gives rise to an inference of the required *mens rea*. *Id*. In such cases, unless and until the defendant challenges the intent element, the prosecutor's need to introduce evidence of prior bad acts is minimal, while the prejudicial effect of admitting the evidence is substantial. *State v. Dudley*, 912 S.W.2d 525, 529 (Mo.App. W.D.1995). The trial court abused its discretion in allowing the prosecution to submit this evidence during the state's case-in-chief.

■ On retrial, Collins' testimony regarding this fifth incident and subsequent abuse may become relevant to rebut a claim by the defense that Wallace did not intend to choke or cause serious physical injury to Collins. Under no circumstances, however, could the tape of the fifth incident be considered legally relevant. All probative information contained on the tape is adequately covered by Collins' testimony. What minimal probative value this tape might provide is overwhelmingly outweighed by its inflammatory and prejudicial effect. On that tape, Wallace admits to hitting Collins and pulling her hair on multiple occasions. Wallace verbally abuses Collins using an inordinate amount of profane language towards her, and sounds consistent with physical abuse arise at various points on the tape. This tape would inflame the passions of any reasonable juror and instill in them the desire to punish the defendant for the recorded act, an act for which he was not on trial. The trial court clearly abused its discretion in allowing this tape into evidence.

For the foregoing reasons, we find the evidence of Wallace's prior bad acts was not relevant.[2] The trial court abused its discretion in allowing the tape, photos, and testimony about these instances into evidence. While Collins' testimony about the fifth incident and the subsequent abuse may have been rendered harmless by the defense eventually asserted by Wallace, we cannot say the same for the other evidence and must, therefore, reverse and remand for a new trial.[3]

2. On appeal, the state, unsupported and in passing, claims this evidence was also relevant to establish motive or common scheme. As with intent, motive was not at issue in this case. The defendant admitted attacking Collins when she told him their relationship was over. "Where, as here, evidence of other crimes was unnecessary because motive, intent, identity, or absence of mistake or accident were not issues, the probative value of such evidence is far outweighed by its prejudicial effect." *State v. Alexander*, 875 S.W.2d 924, 930 (Mo.App. S.D.1994).

As to the State's assertion of common scheme, the common scheme theory is not a "series of crimes" theory in which the evidence of one crime may be introduced to show the defendant's propensity to engage in the crime charged. *State v. Conley*, 873 S.W.2d 233, 236 (Mo. banc 1994). "Rather, the traditional common scheme or plan exception permits evidence of other crimes which are so interrelated to the charged crime that the proof of one tends to establish the other." *Id*. The incidents testified to by Collins were not sufficiently interrelated with the crime charged to establish a common plan or scheme. *See, State v. Bernard*, 849 S.W.2d 10, 16 (Mo. banc 1993).

3. The prosecutor's numerous references to this evidence in closing argument belies the State's assertion that the evidence was used merely to show the intent to cause "serious physical injury." The following excerpts illustrate the fact.

It also strikes me peculiar that you get to a point where you have assaulted so many times, hit, beat, kicked, pulled hair, and, yes choked, and you get to the point where you can't remember the fact you did it or if you admitted to somebody you did it.

\* \* \*

What do you know about this person? You know from the last ten years, for ten years, he couldn't stop ... And you know from his past that every time she said it was over, when they separated and she went with someone else, every time something went against him, what did he do? He lashed out, and assaulted her. This time it was over. This time it was going to stop.

\* \* \*

Basically, "Scott will beat the ___ out of Mary, to cut to the _____ chase." Just for the record here, Scott is having a real difficult time _____ coping with this bull___ that Mary has _____ given him.... "Scott

Because the issue may arise again on retrial, we will address Wallace's second point. In that point, Wallace asserts that the trial court erred in refusing to instruct the jury on the lesser-included offense of assault in the second degree. Wallace claims there was adequate evidence that he acted under the influence of sudden passion arising out of adequate cause and was, therefore, entitled to such an instruction.

■ The failure of a trial court to instruct on all lesser included offenses supported by the evidence is error, however, "the court is not 'obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.'" *State v. Merchant*, 791 S.W.2d 840, 842 (Mo.App. W.D.1990) (quoting § 556.046.2). The defendant bears the burden of injecting the issue of sudden passion arising out of adequate cause. *State v. Boyd*, 913 S.W.2d 838, 842 (Mo.App. E.D.1995). "Passion may be rage or anger, or terror, but it must be so extreme that for the moment, the action is being directed by passion, not reason." *Id.* (quoting R. Perkins, **Criminal Law**, 66 (1969)).

■ Wallace claims that his own testimony that Collins told him their relationship was over, pushed him away, and slapped him was sufficient to establish sudden passion arising out of adequate cause. We need not, and do not, decide whether such evidence could ever rise to the level of adequate cause,[4] because even if it could, nothing in the record indicates that Wallace was even angry, let alone so enraged that he lost his sense of reason. While Wallace testified that he threw Collins to the ground after she slapped him, he did not offer any testimony indicating he was under the influence of a sudden passion. This evidence was insufficient to support the use of the second degree assault instruction, and the trial court did not err in refusing to give the jury that instruction. *Boyd*, 913 S.W.2d at 843; *State v. Simmons*, 751 S.W.2d 85, 90–91 (Mo.App. E.D.1988). Point denied.

For the reasons stated herein, the judgment is reversed and the case is remanded for a new trial.

All concur.

---

doesn't hit Mary or pull her _____ hair unless she starts her _____ lying." [Prosecutor quoting from the tape of the fifth prior bad act; Expletives deleted by this Court]. You know who was in that back bedroom that night from his own words. And, while we focus on the charge that occurred on July 26 of 1994, the man who was in that back bedroom, when it was said it was over, was going to do the same thing he had done many times before; he went for her throat.

* * *

It was he who had to take her to a hotel to hide her injuries. It was he who hid the abuse for years and kept her coming back with, "love you, girl." That's who was in that back bedroom that night, on July 26, 1994. That's who went for her throat.

* * *

This defendant choked her again and again and again. And when it was finally over, he was going to choke her again. For Mary Collins the buck stops here. No more beatings, no more assaults, no more choking. The buck stops here.

* * *

And you may consider the reasonableness and believability of his testimony. Well, the reasonableness of it is completely contradicting his entire history, his entire past of how he's acted. The man who was in that room every time for the last ten years. When is he going to stop choking her? He stops today.

The state's closing argument makes use of the prior bad acts to show Wallace's propensity to commit the crime charged. The clear implication of the state's closing argument is that Wallace should be punished for his continued abuse of Collins rather than this one specific instance.

4. "Adequate cause" means a cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control. § 565.002(1).