**STATE of Missouri, Respondent,**

v.

**Randy E. DANIKAS, Appellant.**

**No. WD 56698.**

Missouri Court of Appeals,
Western District.

Dec. 28, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 1, 2000.

Application for Transfer Denied
March 21, 2000.

Andrew A. Schroeder, Asst. Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Anne E. Hawley, Asst. Atty. Gen., Jefferson City, for respondent.

Before: SMART, P.J., and ELLIS and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Randy E. Danikas appeals the judgment of his jury conviction in the Circuit Court of Jackson County for murder in the first degree, § 565.020,[1] for killing his wife, Holly Danikas, for which he was sentenced to life imprisonment without parole, and for armed criminal action, § 571.015, for which he was sentenced to life imprisonment.

The appellant asserts two points on appeal. In Point I, he claims that the trial court erred in overruling his pretrial motion *in limine* and admitting, at trial, evidence of his past abuse of the murder victim, because it constituted evidence of uncharged crimes that was not logically and legally relevant in proving his guilt. In Point II, he claims that the trial court erred in admitting, over his objections, evidence concerning bumper stickers on his car that read, "A man with a gun has more fun," and "A woman with a gun has more fun," because such evidence was not relevant in proving his guilt.

We affirm.

### Facts

On April 22, 1997, Katrina Beatty arrived at the home of the appellant and his wife, the victim. The three had planned to gamble at a local riverboat casino that night, but the appellant and Mrs. Danikas began to argue. During the argument, the appellant struck the victim and ordered her to return from the casino with the $20 he had given her with which to gamble, or he would kill her. The appellant also told Beatty, "[t]ake [the victim] to the boat or I will kill her." He then pushed the victim out of the house before she could put on her shoes. The appellant did not accompany Beatty and the victim to the casino that night.

After stopping by Beatty's house to pick up some shoes for the victim, the two arrived at approximately 8 p.m. at Harrah's Casino, where the victim promptly lost the $20. The two then drove to Levi Spencer's house. While there, Beatty, the victim and Spencer smoked methamphetamine, and Beatty borrowed $50 from Spencer. Beatty and the victim returned to the casino at about 12:30 a.m., where the victim lost her share of the $50. To prevent the victim from incurring the wrath of the appellant, as he had threatened, Beatty gave the victim $20.

After stopping to buy cigarettes, Beatty and the victim returned to the victim's residence around 5 a.m. When they tried to enter the house, the appellant held the front door closed so that they could not enter. Eventually, the appellant allowed Beatty and the victim to enter the home, after which he began arguing with the victim. During the argument, the appellant struck the victim, who held up a pillow in·an attempt to block the blows. The couple then went into the bedroom and continued arguing. Beatty, who remained in the living room, said she heard the victim say, "No, Randy, stop, Randy don't."

At some point, two of the Danikases's friends stopped by, at which time the appellant and the victim quit arguing. Beatty then left with the friends and went to the house of the appellant's cousin. Short-

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

ly thereafter, the appellant arrived at his cousin's and asked Beatty where she and the victim had been the previous night. Beatty told him about visiting the home of Spencer. The appellant then spoke with his uncle, who lived with the appellant and the victim. At the time, he was showing those present some firearms he wished to sell. The appellant asked him about the compatibility of a .22 caliber bullet with a .22 caliber rifle.

At approximately 7:20 a.m., the appellant left his cousin's and went home. Approximately 45 minutes later, he arrived at the hospital with the victim, who had been shot in the stomach. The victim subsequently died from the gunshot wound.

An officer from the Independence Police Department was dispatched to the hospital in response to a call about the shooting. After he arrived at the hospital, he spoke with the appellant about what happened. He told the police officer that he had been cleaning a .22 caliber rifle in his living room and had placed a shell in the chamber to test whether it was functioning properly. He stated that while he was cleaning the gun, he and the victim began arguing. He told the officer that she grabbed the barrel of the rifle and pulled it toward her stomach. As she pulled the gun toward her, the appellant claimed that his finger slipped and he accidentally shot her in the stomach. Later that day at the hospital, the appellant recounted the same story to a detective.

Pursuant to a request by the police, the appellant gave permission for a search of his home. Pursuant to their search, the police found a .22 caliber rifle and a spent .22 caliber bullet in the living room, a plastic baggie containing ammunition in one bedroom, and two live .22 caliber bullets in another bedroom. The officers dusted the rifle for fingerprints, but did not discover any prints of value on the barrel to establish whether the victim grabbed it as the appellant claimed. In addition to searching the house, the officers searched the appellant's car, and

found a clump of hair on the floorboard and two bumper stickers, which stated, "A man with a gun has more fun" and "A woman with a gun has more fun."

After being transported to the police station and being read his *Miranda* rights, the appellant again was asked what had happened regarding the shooting. He gave a statement to police in which he said he had been angry with the victim because she had been out all night and had been at a "dope house" with another man. He also said the end of the barrel was touching the victim's stomach when the gun discharged. Upon request of the police officers, the appellant agreed to re-enact the sequence of events leading up to the shooting. While doing so, he again stated that the victim pulled the gun flush against her stomach.

After the re-enactment was completed, but before the interrogation of the appellant resumed, the police officer interrogating the appellant learned that the rifle recovered from the appellant's home had to be cocked in order to fire. As a result, the officer asked the appellant why he had not mentioned this fact before. The appellant replied that he was not sure. When another officer, Officer Terry Dorman, took over the interrogation, the appellant told him that he had loaded the gun and pointed the rifle at the victim to threaten her, rather than to clean the gun. The appellant also said that he had threatened and abused the victim in the past.

Dr. Sam Gulino, a forensic pathologist, performed an autopsy on the victim and testified to his findings at trial. He found her body to be covered with multiple bruises and abrasions that were approximately two weeks old. He also found a lack of stipple marks near the wound, from which he concluded that the fatal shot was fired either from over two feet away or into an intermediate object, such as a pillow. A firearms and tool mark expert found that the rifle had been fired from a range over twelve inches.

The appellant was indicted on June 20, 1997, and later was charged by information with one count of murder in the first degree and one count of armed criminal action in the Circuit Court of Jackson County, Missouri. On June 24, 1998, the appellant filed three separate motions to suppress evidence, one with respect to the search of the appellant's residence, one with respect to his vehicle, and one with respect to his statements given to the police. All three motions were overruled.

On September 10, 1998, the appellant filed an all-encompassing motion *in limine*, requesting the trial court to prohibit the State from mentioning, *inter alia,* at trial, testimony and other evidence of the appellant's prior abuse of the victim. The motion was overruled. The appellant also filed a motion to dismiss the charge of murder in the first degree on September 15, 1998, on the ground that

the Missouri homicide statute, RSMo § 565.020, et seq., fails to make a meaningful, reasoned distinction between the offenses of premeditated homicide and undifferentiated purposeful homicide, in violation of the defendant's rights to a fair and impartial jury, to be free from cruel and unusual punishment, and to due process of law.

The trial court overruled the appellant's motion and the trial commenced later that day.

At trial, which commenced on September 15, 1998, the appellant claimed that the shooting of the victim was accidental. At the close of the State's evidence and all the evidence, he moved for a judgment of acquittal alleging that the State had failed to prove all of the elements of the crimes with which he was charged. The motions were overruled. The jury was instructed on first degree murder and armed criminal action. After deliberating on the case, the jury returned guilty verdicts as to both charges. On October 10, 1998, the appellant filed a motion for a judgment of acquittal notwithstanding the verdict or, in the alternative, for a new trial, which was

denied. He then was sentenced on November 16, 1998, to concurrent terms of life imprisonment without parole for murder and life imprisonment for armed criminal action.

This appeal follows.

## I.

In Point I, the appellant claims that the trial court erred in overruling his motion *in limine* and admitting, at trial, evidence of his past abuse of the victim because it constituted evidence of uncharged crimes that was not logically and legally relevant in proving his guilt as to the crimes charged. Specifically, he contends that the trial court erred in admitting the testimony of Candrea Karns and Officer Dorman, and Dr. Gulino's testimony concerning the fifty-two plus bruises and abrasions on the victim's body and the autopsy photographs depicting them. We find the appellant's claim to be without merit.

### Standard of Review

A trial court's ruling on a motion *in limine* is interlocutory in nature, which is subject to change in the course of a trial, and preserves nothing for appellate review. *State v. Purlee,* 839 S.W.2d 584, 592 (Mo. banc 1992); *State v. Stephan,* 941 S.W.2d 669, 674 (Mo.App.1997); *State v. Boulware,* 923 S.W.2d 402, 404 (Mo.App. 1996). As such, the trial court's ruling on a motion *in limine* is not reviewable on appeal. *Purlee,* 839 S.W.2d at 592. To preserve error as to claimed inadmissible evidence, the party opposed to its admission must object to it at trial. *Id.* Assuming such an objection is made, it is the trial court's ruling thereon, admitting or excluding the evidence, which is subject to review on appeal. In our case, the appellant did object to the challenged evidence in question, which objections were overruled. Thus, it is these rulings of the trial court, in admitting the evidence challenged by the appellant, which we review.

A trial court typically has broad discretion in deciding whether to admit evidence and, as such, its decision will not be disturbed unless a clear abuse of discretion is shown. *State v. Williams*, 976 S.W.2d 1, 2 (Mo.App.1998). "The decision to admit evidence is an abuse of discretion where it 'is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration.'" *Id. (quoting Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo. *banc* 1991)).

### Discussion

It is well settled that evidence of uncharged crimes is inadmissible to prove that a defendant has a propensity to commit similar crimes. *State v. Gilyard*, 979 S.W.2d 138, 140 (Mo. *banc* 1998) (*citing State v. Bernard*, 849 S.W.2d 10, 13 (Mo. *banc* 1993)). This is so because "showing the defendant's propensity to commit a given crime is not a proper purpose for admitting evidence, because such evidence 'may encourage the jury to convict the defendant because of his propensity to commit such crimes without regard to whether he is actually guilty of the crime charged.'" *State v. Burns*, 978 S.W.2d 759, 761 (Mo. *banc* 1998) (*quoting Bernard*, 849 S.W.2d at 16). However, evidence of uncharged crimes generally is admissible for any other purpose if it is logically relevant, "in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial," and legally relevant, in that "its probative value outweighs its prejudicial effect." *Id.; State v. Rehberg*, 919 S.W.2d 543, 548 (Mo.App.1995). As to legal relevancy, the probative value of the uncharged crimes evidence must outweigh its prejudicial effect to be admissible because a criminal defendant should not be convicted simply because he is a "bad guy." *Williams*, 976 S.W.2d at 4 (*citing*

*State v. Jones*, 914 S.W.2d 852, 856 (Mo. App.1996)).

> Generally, any evidence is regarded as prejudicial that would tend to cause a jury to convict. However, in the context of determining the legal relevance of uncharged crimes evidence, prejudice is a function of whether the admission of this evidence would cause a jury to convict as to the charged crimes simply because the defendant had engaged in prior bad acts or crimes, regardless of the logically relevant evidence in the case.

*Id.* Evidence should not be excluded "simply because it also tends to prove the defendant guilty of an uncharged crime." *Id.*

Our appellate courts have recognized that evidence of uncharged crimes is admissible to show motive, intent, the absence of mistake or accident, a common plan or scheme "embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other," the identity of the person charged with commission of the crime, or the defendant's signature *modus operandi. Id.; Gilyard*, 979 S.W.2d at 140–41. Evidence of uncharged crimes also has been deemed admissible "to allow the state to 'present a complete and coherent picture of the events that transpired.'" *Williams*, 976 S.W.2d at 4 (*quoting State v. Skillicorn*, 944 S.W.2d 877, 886–87 (Mo. banc ̓), cert. denied, 522 U.S. 999, 118 S.Ct. 568, 139 L.Ed.2d 407 (1997)).

Due process requires that, in order to convict a person of a crime, the State is required to prove beyond a reasonable doubt each and every element of the crime charged. *State v. Grim*, 854 S.W.2d 403, 417 (Mo. *banc* 1993). In this case, the appellant was charged and convicted of murder in the first degree, § 565.020,[2] and armed criminal action,

---

**2.** Section 565.020 provides, in pertinent part, that "[a] person commits the crime of murder in the first degree if he knowingly causes the

death of another person after deliberation upon the matter." § 565.020.1.

§ 571.015.1.[3] To convict him of first degree murder, the State was required to prove beyond a reasonable doubt that he (1) knowingly (2) caused the death of his wife (3) after deliberation upon the matter. § 565.020; MAI–CR 3d 313.02 [Revised Jan. 1, 1987]; *State v. O'Brien*, 857 S.W.2d 212, 217 (Mo. *banc* 1993). To convict him of armed criminal action, the State was required to prove beyond a reasonable doubt that (1) he committed the underlying felony of murder in the first degree, and (2) did so "by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon." § 571.015.1; MAI–CR 3d 332.02 [Revised Oct. 1, 1995]; *State v. Jennings*, 887 S.W.2d 752, 755 (Mo.App.1994). " 'By definition, armed criminal action incorporates all the elements of the underlying felony.' " *Id.* (*quoting State v. Hernandez*, 815 S.W.2d 67, 72 (Mo.App.1991)). "By such incorporation, armed criminal action adopts the level of mental culpability required of the underlying offense." *Id.*

At trial, the appellant did not contest that fact that he caused his wife's death by shooting her; rather, he defended on the basis that he did not do so knowingly, but that her death was accidental. Because the appellant put in dispute at trial the issue of his intent, the State contends that evidence of his past abuse of the victim was both logically and legally relevant to prove that he knowingly killed the victim with the requisite deliberation. We agree.

At trial, the State introduced evidence of prior acts of abuse by the appellant against the victim to demonstrate that her death was not accidental, as claimed by him. As to such evidence, the appellant claims that the testimony of Candrea Karns and Officer Dorman, and the autopsy photographs of the victim and testimony of the pathologist, Dr. Gulino, concerning his autopsy, constituted inadmissible

evidence of uncharged crimes, and that the trial court committed reversible error by allowing it. Specifically, as to Karns, who had known the appellant and victim for approximately six months prior to the victim's death, the appellant challenges her testimony that she observed him, two days before the victim's death, grab a knife from the victim's hand and hold it to her neck, telling her he wished she were dead. She also testified that, on another occasion, she saw the appellant and the victim sitting in their car when the appellant grabbed the victim by the hair, bashed her head against the dashboard, and called her a "fucking bitch." As to Officer Dorman, the appellant objects to his testimony under questioning on direct examination by the prosecutor that:

A. [Appellant] stated he had grabbed her by the hair, by the head of the hair, slapped her in the face, and slapped her in the body several times. He stated that he had threatened her with a knife, held a knife to her throat. He had either that day or the day before, he had taken a propane torch and held it to her and stated one occasion he had taken a Rossi handgun and held it to her and that gun was taken by the police during—

Q. I'm sorry, thank you, Detective. These are all the ways he told you he had threatened his wife in the past?

A. Yes.

As to autopsy evidence, the appellant challenges Dr. Gulino's testimony regarding the numerous bruises and abrasions found on the victim's body. He also objects to the admission of the autopsy photographs depicting the bruises and abrasions, which were admitted.

██ It is well settled in the law that, in cases of murder or assault, prior assaults

---

**3.** Section 571.015 provides, in pertinent part, that "[e]xcept as provided in subsection 4 of this section, any person who commits any felony under the laws of this state by, with, or

through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action." § 571.015.1.

or abuse by the defendant of the victim are admissible as being logically relevant to show motive, intent, or absence of mistake or accident. *See State v. Martinelli*, 972 S.W.2d 424, 436 (Mo.App.1998); *State v. Jacobs*, 939 S.W.2d 7, 10 (Mo.App.1997); *State v. Candela*, 929 S.W.2d 852, 871 (Mo. App.1996); *State v. Post*, 901 S.W.2d 231, 236 (Mo.App.1995) (*citing State v. Shaw*, 847 S.W.2d 768, 778 (Mo. *banc* 1993)); *State v. Williams*, 865 S.W.2d 794, 802–04 (Mo.App.1993). In *State v. Post*, the court held that such evidence is admissible to show the defendant's *animus* toward the victim as a motive to cause injury, *Jacobs*, 939 S.W.2d at 10, and "in demonstrating a pattern of intentional infliction of injury which could have culminated in an intentional homicide." *Post*, 901 S.W.2d at 236.

In *State v. Martinelli*, which we find to be instructive on the issue presented, the defendant, as here, in defending against a charge of first degree murder of his wife, claimed that her shooting was accidental. *Martinelli*, 972 S.W.2d at 428, 436. He was found guilty and appealed, claiming, *inter alia*, that his conviction should be overturned because the trial court erred in allowing evidence of a prior assault by him of the victim in that it constituted impermissible evidence of uncharged crimes. The appellate court disagreed and found it was admissible as being logically and legally relevant to show his motive, intent, or absence of mistake or accident. *Id.* at 435–37.

In his brief, the appellant cites *State v. Wallace*, 943 S.W.2d 721 (Mo.App.1997), for the proposition that evidence of prior incidents of assault and abuse is not legally relevant because its prejudicial effect outweighs its probative value. The appellant's reliance on *Wallace* is misplaced. In *Wallace*, the defendant was charged and convicted of first degree assault. *Id.* at 722. On appeal, he, *inter alia*, challenged the admissibility of evidence of prior bad acts by him against the victim, including a vicious assault, which rendered the victim unconscious. *Id.* at 723–24. The appellate court found that the challenged evidence was logically relevant in that a defendant's pattern of abuse may be "relevant to rebut a claim of accident or in demonstrating a pattern of intentional infliction of abuse that eventually culminated in a physical assault with the intent to cause serious physical injury." *Id.* at 724. However, it ruled that the evidence was inadmissible on the basis that it was not legally relevant in that its probative value was outweighed by its prejudicial effect and reversed the defendant's conviction. In doing so, the court stated that "unless and until the defendant challenges the intent element, the prosecutor's need to introduce evidence of prior bad acts is minimal, while the prejudicial effect of admitting the evidence is substantial." *Id.* at 725. In our case, unlike in *Wallace*, the intent element was squarely challenged by the appellant, rendering evidence of his prior assaults and abuse of the victim legally relevant.

In light of the discussed authorities for admitting evidence of prior assaults and abuse to convict for assault or murder and the claim of the appellant that the victim's death was accidental, we find no abuse of discretion by the trial court in admitting the testimony of Karns and Dorman concerning prior assaults and abuse by the appellant of the victim to convict him as charged. Their testimony was logically and legally relevant to show that the shooting of the victim was not accidental as the appellant claims.

■■■■■ As to the appellant's contention that Dorman's testimony as to the prior incident where the appellant held a handgun to the victim's head being too remote in time to be legally relevant, we disagree. "The remoteness in time of the other bad acts is ordinarily a factor affecting only the weight afforded the evidence." *Shaw*, 847 S.W.2d at 778 (*citing State v. Thurman*, 692 S.W.2d 317, 319 (Mo.App. 1985)). "Where, however, the remoteness is so great that it erodes the probative value of the evidence, the prejudicial effect outweighs its probative value and the evi-

dence is not admissible." *Id.* In *State v. Bernard,* decided the same day as *State v. Shaw,* the Missouri Supreme Court held that "it rests in the sound discretion of the trial court to determine whether the passage of time between incidents is so lengthy that the prejudice or other 'cost' of the evidence outweighs the probative value of the signature *modus operandi.*" *Bernard,* 849 S.W.2d at 19. Having so held, the *Bernard* court then found that the trial court did not abuse its discretion in admitting evidence of bad acts occurring *12* to *13* years prior. *Id.* at 19–20.

Here, the evidence, not subject to attack as being too remote in time, established that the appellant had known the victim for approximately three years and had recently physically abused her on several occasions. From this it could be inferred that sometime during the last three years, during his repeated acts of abuse against the victim, the appellant held a handgun to her head as testified to by Officer Dorman, an act consistent with the act for which he was charged and convicted. As such, this evidence was not too remote in time so as to render it legally irrelevant and inadmissible, and the trial court did not abuse its discretion in admitting it. As to this issue, we would also point out, that at page thirty-three of his brief, the appellant contends that Officer Dorman's testimony *supported* his defense that the shooting was accidental in that the jury could view the "evidence [as] suggest[ing] that Mr. Danikas did not intend to kill Mrs. Danikas on April 23, 1997, based merely on his actions of retrieving and pointing a .22 caliber rifle at her, because he had done the same thing in the past without intending her demise." In light of this argument of the appellant, even assuming that the challenged testimony was inadmissible in that its probative value was outweighed by its prejudicial effect, the argument certainly could be made that the error in admitting it was harmless in that the jury could have viewed it as being beneficial to the defense.

Having determined that the testimony of Karns and Officer Dorman was admissible, as being logically and legally relevant to establish the guilt of the appellant of the crimes charged, we now turn to his challenge with respect to the autopsy evidence, consisting of autopsy photographs and Dr. Gulino's testimony concerning the multiple bruises and abrasions appearing on the victim's body. The prejudicial effect claimed was that the jury was misled into believing that the appellant caused these numerous injuries leading them to conclude that there was a clear pattern of abuse by the appellant of the victim from which they could reasonably infer that he intended to shoot and kill her on the day in question. A careful reading of the appellant's assertions as to the inadmissibility of this evidence reveals that his complaint is based on his contention that even if it was otherwise logically and legally relevant, there was no evidence in the record from which the jury could connect the bruises and abrasions to the appellant so as to infer his intent therefrom, citing *State v. Alexander,* 875 S.W.2d 924, 928 (Mo.App.1994). We accept *State v. Alexander* for the proposition that evidence of uncharged crimes, otherwise relevant, must be linked to the defendant to be admissible as being logically and legally relevant. *Id.* at 928–29. However, *State v. Alexander* does not save the day for the appellant.

Photographs are relevant if they show the scene of the crime, the identity of the victim, the nature and extent of the wounds, the cause of death, the condition and location of the body, or otherwise constitute proof of an element of the crime or assist the jury in understanding the testimony. A photograph is not rendered inadmissible simply because other evidence described what is shown in the photograph.

*State v. Rousan,* 961 S.W.2d 831, 844 (Mo. banc) (citations omitted), *cert. denied,* 524 U.S. 961, 118 S.Ct. 2387, 141 L.Ed.2d 753 (1998). Thus, the photographs depicting

the bruises and abrasions on the victim's body and Dr. Gulino's testimony concerning the same were admissible to show prior acts of abuse by the appellant of the victim to establish that he intentionally shot and killed her, unless it can be found that the evidence was insufficient to find that the appellant inflicted them and that the jury relied on them in finding the necessary intent to convict him as charged.

Dr. Gulino testified that the bruises and abrasions were approximately two weeks old. There was evidence that the appellant had physically abused the victim on numerous occasions within the last two to three weeks, which could reasonably account for some of the bruises and abrasions – how many is uncertain. However, even assuming, *arguendo*, that the pictures and Dr. Gulino's testimony concerning the bruises and abrasions should have been excluded as being legally irrelevant in that not all of them could be linked to the appellant, his claim must still fail. This is so in that any error in admitting the challenged evidence was, in our view, harmless and not reversible error in that there is other admissible evidence in the record sufficient to establish the appellant's requisite intent to convict him as charged. *State v. Dennis*, 990 S.W.2d 78, 81 (Mo. App.1999); *Martinelli*, 972 S.W.2d at 436.

Point denied.

## II.

In Point II, the appellant claims that the trial court erred in admitting, over his objections, evidence concerning bumper stickers on his car which read, "A man with a gun has more fun" and "A woman with a gun has more fun," because such evidence was not relevant in proving his guilt of the crimes charged. The claim is without merit.

Our standard of review for admission of evidence is for an abuse of discretion, as discussed in Point I, *supra*. *Williams*, 976 S.W.2d at 2. Even assuming, *arguendo*, that the trial court did abuse its discretion in allowing the challenged evidence and, thus, erred, to be entitled to appellate relief, the appellant must show that it was reversible error. *Id.* at 3; *Dennis*, 990 S.W.2d at 81. To show such error, the appellant must demonstrate not only that the admission of the challenged evidence was erroneous, but also that it was prejudicial. *State v. Masden*, 990 S.W.2d 190, 193 (Mo.App.1999). " '[A] conviction will be reversed due to admission of improper evidence only if the defendant proves prejudice by showing a reasonable probability that in the absence of such evidence the verdict would have been different.' " *State v. Evans*, 992 S.W.2d 275, 290 (Mo.App.1999) (*quoting State v. Nastasio*, 957 S.W.2d 454, 459 (Mo.App.1997)). Here, even assuming, *arguendo*, that the admission of the evidence regarding the bumper stickers was erroneous, as the appellant contends, it was not prejudicial in that, in light of the other admissible evidence in the record, even if this evidence had been excluded, it would not have changed the outcome of the case.

Point denied.

### Conclusion

The circuit court's judgment of the appellant's jury convictions for murder in the first degree, § 565.020, and armed criminal action, § 571.015, is affirmed.

All concur.