## STATE of Missouri, Respondent,

v.

### Ronald DUNCAN, Appellant.

### No. ED 77010.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 19, 2000.

Rosalynn Koch, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for respondent.

## *OPINION*

JAMES R. DOWD, Judge.

This case presents a question of when the introduction of inadmissible evidence rises to the level of prejudice necessary to reverse a jury verdict.

■ Ronald Duncan appeals from his conviction for driving while intoxicated pursuant to § 577.010 RSMo (1994). We accept as true all the evidence favorable to the state, including all favorable inferences drawn from the evidence. *State v. Smith,* 11 S.W.3d 733, 736 (Mo.App.E.D.1999).

On October 17, 1998, at approximately 2:00 a.m., State Highway Patrol Trooper Russ Sargent observed Ronald Duncan speeding. As Sargent's vehicle approached Duncan's, Duncan turned into a subdivision. Sargent pulled over and waited on the shoulder. When Duncan returned to the highway less than a minute later Sargent stopped him for speeding. After failing to produce identification, Duncan was asked to step out of his car. According to Trooper Sargent, Duncan smelled of liquor, swayed back and forth, slurred his speech and had glassy eyes. Because Sargent suspected that Duncan was intoxicated, he administered a series of field sobriety tests, including a portable breath test (PBT). Duncan failed the PBT and three of the other four field sobriety tests. Based on his observations and the results of the PBT, Sargent arrested Duncan for driving while intoxicated. At the station, Duncan admitted to Sargent that

he drank four beers that evening between 11:00 p.m. and approximately 1:30 a.m., but refused to take a breath analysis test.

At trial, the court admitted Sargent's testimony that Duncan failed the portable breath test, despite defense counsel's continuing objection and offer to stipulate to probable cause. At closing argument, the prosecutor reminded the jury three times that Duncan had failed the portable breath test. Duncan was then convicted for driving while intoxicated.

Duncan appeals, maintaining that the trial court erred in admitting the results of the portable breath test, and that this was prejudicial. Duncan points to § 577.021 RSMo (1994), which states that evidence of a portable breath test "shall not be admissible as evidence of blood alcohol content." While the state concedes that the trial court erred in admitting the results of the portable breath test, it contends the error was harmless because the admissible evidence overwhelmingly showed that Duncan was driving while intoxicated.

■ We review the trial court's admission of evidence for an abuse of discretion. *State v. Danikas*, 11 S.W.3d 782, 792 (Mo.App.W.D.1999). An abuse of discretion in admitting challenged evidence is reversible error only if the admission prejudiced the defendant. *Id.; State v. Russell*, 872 S.W.2d 866, 869 (Mo.App. S.D. 1994). To prove prejudice, a defendant must show "a reasonable probability that in the absence of such evidence the verdict would have been different." *Danikas*, 11 S.W.3d at 792. Improperly admitted evidence should not be declared harmless unless it is harmless without question and it is clear that the jury was not influenced by or disregarded the evidence. *Russell*, 872 S.W.2d at 869. Admission of improper evidence is harmless if (a) the other evi-

dence of guilt is overwhelming or (b) the improper evidence is not highlighted *and* cumulative of other evidence. *State v. Hanway*, 973 S.W.2d 892, 897 (Mo.App. W.D.1998).

A roadside portable breath test indicates the presence of alcohol based on a breath sample. It is designed for use by police officers to assist them in determining whether they have probable cause to arrest a suspect. *Hanway*, 973 S.W.2d at 896. The portable test is not subject to the same Department of Health Regulations that govern breath analysis tests admissible to prove that a defendant was intoxicated. *See* Mo.Code Regs. title 19, §§ 25–30.011 – 25–30.060. Its use is strictly limited by statute. Section 577.021 RSMo (1994), in relevant part, states:

> A member of the state highway patrol may, prior to arrest, administer a chemical test to any person suspected of operating a motor vehicle in violation of section 577.010 or 577.012. A test administered pursuant to this section shall be admissible as evidence of probable cause to arrest and as exculpatory evidence, but shall not be admissible as evidence of blood alcohol content.

This statute authorizes a highway patrol officer to administer a pre-arrest chemical test to any individual suspected of driving while intoxicated. The state may use the results of the test to show probable cause to arrest and the defendant may use those results as exculpatory evidence. But the legislature has clearly forbidden the use of the PBT to prove intoxication. Section 577.021 thus represents a legislative conclusion that the portable breath test is too unreliable to be used to prove intoxication.

■ As the state concedes, the trial court abused its discretion by improperly admitting the portable breath test.[1] The

---

1. During pre-trial conference the court ruled that testimony regarding the PBT would be confined to the fact that Duncan failed the test, but that the state would not be permitted to introduce evidence of the *numerical score* of the test. This was error because the statute says simply that the "test ... shall not be admissible as evidence of blood alcohol content." It does not say that "the numerical score on the test is inadmissible." The test *in its entirety* is inadmissible as evidence to prove that a defendant's blood alcohol level

only issue on appeal is whether there was prejudice. This requires us to determine if, in the absence of the improperly admitted evidence, there is a reasonable probability that the verdict would have been different. *Danikas*, 11 S.W.3d at 792. A number of factors are relevant in analyzing this, including: (1) the presence or absence of an objection by trial counsel; (2) the request or lack thereof for a cautionary instruction; (3) whether the reference was inadvertent or purposefully used to bolster and rehabilitate the witness's credibility; (4) whether the witness's credibility played a vital role in the case; and (5) whether the testimony was emphasized and stressed during the trial or was merely an isolated incident. *See People v. Whitfield*, 58 Mich.App. 585, 228 N.W.2d 475, 477–78 (1975). Applying these factors to this case, we find that prejudice occurred.

First, defense counsel objected to the introduction of the PBT both at pre-trial conference and at trial. Second, the court admitted the PBT without giving a limiting instruction to the jury that this evidence was not to be considered in determining Duncan's guilt.[2] Third, it is clear that Sargent's subjective impressions of Duncan were bolstered by the PBT. Fourth, Sargent was the state's only witness. Any credibility he gained because the PBT corroborated his subjective evaluation would certainly have influenced the jury's determination. Fifth, while the test was not the only evidence the state put forward, it was emphasized both at the evidentiary phase and in closing argument.

During the state's case, and over defense counsel's continuing objection, the state adduced the following testimony from trooper Sargent:

Q. Did you give a portable breath test?

A. Yes, sir, I did.

Q. And can you describe what the portable breath test is?

A. This is a portable breath tester. It's called NESTE–II. And to perform it, you have a clear, plastic tube that's about this long for the subject to blow into. You test it first to make sure it zeros out at zero so it's a fair test. And then you press this button. The subject blows into it. When these two lights light up that means you have a correct air sample in this chamber. As soon as they light up the subject can quit blowing. You press the button that says "read" and it gives you a readout.

Q. Did you give this test to Ronald Duncan?

A. Yes, sir, I did.

Q. Did the red and green light come on?

A. Yes, sir, it did.

Q. Did Ronald Duncan pass or fail this test?

A. He failed the test.

During closing argument, the state argued the results of the portable breath test three times. First, at the close of his description of the field sobriety tests, the prosecutor said: "And then he gave him a portable breath test, and he failed the portable breath test." After the defense's closing argument, the prosecutor reminds the jury: "Then there was the portable breath test." After objection and the court correcting the prosecutor's characterization of the gaze nystagmus test, the prosecutor returned immediately, saying: "The portable breath test though, he failed that." Given this obvious reliance on the PBT to make its case, and the fact that the

---

exceeded the legal limit. *See State v. Deshaw*, 404 N.W.2d 156, 158 (Iowa 1987) (interpreting a similar statute on the admissibility of PBTs).

**2.** But *see, State v. Schimmel*, 409 N.W.2d 335, 340 (N.D.1987)(instruction limiting the use of

the PBT to show the reasonableness of the officer's behavior, coupled with evidence of two other blood alcohol tests showing the defendant had a blood alcohol content over the legal limit did not result in prejudice).

jury may have relied on the test in whole or in part to convict, we cannot say that the court's improper admission was "harmless without question" or that the record demonstrates the evidence did not influence the jury. *Russell,* 872 S.W.2d at 869. Absent the PBT results, there is a reasonable probability that the jury would have reached a different verdict. Point one granted.

We reverse the judgment of the trial court and remand for a new trial.

GARY M. GAERTNER, P.J., concurs.

PAUL J. SIMON, J., concurs.