**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Gregory L. TEAGUE, Defendant–
Appellant.**

No. 24111.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 24, 2002.

918

Irene Karns, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Andrew W. Hassell, Assistant Attorney General, Jefferson City, for Respondent.

PHILLIP R. GARRISON, Presiding Judge.

Gregory L. Teague ("Defendant") appeals his conviction on two counts of involuntary manslaughter, § 565.024,[1] following a jury trial in the Circuit Court of Ripley County.[2] He challenges the sufficiency of the evidence regarding whether he was under the influence of alcohol; and contends that the trial court erred by allowing a witness to testify concerning the contents of a surveillance videotape in violation of the best evidence rule. For the reasons outlined below, we affirm the judgment entered on the jury verdict.

At approximately 3:45 p.m. on October 14, 1999, Defendant arrived at the Hide-a-way, a bar on Highway 60 in Butler County, Missouri, and the owner refused to serve him because "[h]e was highly intoxicated." The owner noticed Defendant's "[s]lurred speech, staggering, [and] hassling [of] other customers." One bar patron contradicted the owner's testimony. He testified the owner served Defendant a beer and that Defendant was not drunk when he entered the bar. On cross-examination, this witness noted that he himself tended to stay drunk during the day and had difficulty remembering things. Two other patrons in the bar described Defendant as intoxicated, including a woman who encountered Defendant face-to-face and noted a strong smell of alcohol.

At approximately 4:00 p.m., the owner asked Defendant to leave. Defendant did leave after the owner called the sheriff's department. When Defendant left the parking lot, his vehicle "did a half donut" and made a right turn onto Highway 60 traveling eastbound with the tires "squalling."[3]

A witness also traveling eastbound was passed and nearly hit by Defendant's vehicle, which was being driven erratically and at a rate of speed that other witnesses estimated at between seventy-five and ninety miles per hour. At the intersection of Highway 60 and Highway 51, Defendant's vehicle struck the driver's side door of a vehicle attempting to make a left turn from Highway 51 onto Highway B. Both occupants of the vehicle with which Defendant's vehicle collided died at the scene.

With regard to the timing of the collision, Defendant does not dispute that it occurred immediately after he left the Hide-a-way. During cross-examination by Defendant's counsel of the Missouri State Highway Patrol trooper who investigated the incident, the following exchange took place:

Q: They saw him at the bar?

A: Huh, the Hide-a-way Saloon where [the owner of the bar] was at.

Q: He left there right before?

---

1. Unless otherwise noted, all statutory references are to RSMo 2000.

2. This case arose in Butler County but was transferred to Ripley County pursuant to Defendant's application for change of venue.

3. None of the witnesses from the Hide-a-way, including the owner, provided a description of the vehicle that Defendant was driving as he left the parking lot; however, while Defendant disputes he was intoxicated, he neither objected at trial, nor does he dispute on this appeal, that the vehicle in which he was seen leaving the bar is the same vehicle, a Chevy S–10 pickup, which was involved in the subsequent collision. A witness whom Defendant later passed on the highway and the trooper who investigated the collision were both shown the same exhibit, a photograph of the pickup, and identified it as the vehicle involved in the crash.

A: Yes.

Defendant got out of his vehicle after the collision. He was bleeding and "was weaving ... and kind of woozy." Defendant walked toward a grocery store and, when encouraged by someone at the scene to sit down due to his injuries, said he needed to call the police. The Missouri State Highway Patrol trooper who responded to the incident was unable to locate Defendant at the accident scene or at the grocery store. Concerned Defendant may have wandered away, and due to his injuries was disabled in the surrounding fields, an aerial search was conducted, but it was unsuccessful.

The trooper ascertained that the vehicle was registered to Defendant's wife. At approximately 5:00 p.m., Defendant showed up at his wife's place of work, Rowe Furniture, and told her that he had been involved in an accident. Defendant also asked his wife to report the vehicle stolen. The Poplar Bluff Police Department received the stolen vehicle report at 5:10 p.m. Defendant's wife attributed his behavior during their discussion to his being scared, and noted that she did not smell alcohol on him and that he seemed steady on his feet. However, another Rowe Furniture employee who witnessed the discussion between Defendant and his wife testified that Defendant did appear intoxicated and was "hollering and screaming at her [Defendant's wife] right up into her face, kind of stumbling around."

Defendant's aunt also worked at Rowe Furniture. She testified that she was with Defendant's wife when Defendant entered the facility, and that she ended up driving Defendant to a bar and motel in Neelyville. She described Defendant as scared and testified she did not smell any alcohol on him and did not notice any other signs

of intoxication. She later contacted Butler County law enforcement to report where she had taken Defendant. An employee of the bar to which Defendant was taken recalled serving Defendant a beer at approximately 5:30 p.m. and the employee saw *no signs* of intoxication. Defendant was placed under arrest at some point later that day.

The State's evidence at trial also included the testimony of Richard Davidson ("Davidson"), a security officer employed at Rowe Furniture. On October 15, 1999, following a report of an incident at the plant, Davidson reviewed the surveillance tapes generated from a camera directed on the entrance to the facility. When the State began asking Davidson questions about the contents of the tape, Defendant's counsel objected that his testimony was not the best evidence. The objection was overruled. Davidson testified that in reviewing the tape, which did not contain any audio, he saw Defendant shouting and considered Defendant to be intoxicated. He further testified that the tape revealed "a lot of in her face [toward Defendant's wife] hollering, a lot of abnormal behavior that you wouldn't see normally, except for somebody that is really upset or probably been drinking." On cross-examination, Davidson stated that he could not say for sure that Defendant had been drinking or was drunk, and that he noticed no staggering by Defendant. On re-direct, however, he said that Defendant "didn't walk a straight line."

Defendant was charged with two counts of involuntary manslaughter, and one count of leaving the scene of a motor vehicle accident.[4] Jury instructions for the involuntary manslaughter counts included the requirement that the jury "find and

**4.** At trial, Defendant did not contest the charge of leaving the scene of a motor vehicle accident and there is no issue regarding his conviction on that charge in this appeal.

believe from the evidence beyond a reasonable doubt ... that [D]efendant operated a motor vehicle ... while in an intoxicated condition," in order to find Defendant guilty. The instructions further defined "intoxicated condition" as meaning "under the influence of alcohol." The jury returned a guilty verdict on all three counts. Defendant was sentenced to concurrent terms of twenty years imprisonment for the involuntary manslaughter counts and a consecutive ten-year term for leaving the scene of a motor vehicle accident.[5]

 In his first point on appeal, Defendant challenges the sufficiency of the evidence. He argues that the State failed to present evidence from which a reasonable juror could find beyond a reasonable doubt that he was under the influence of alcohol at the time of the collision. In our review of this point, we accept "as true all of the evidence favorable to the [S]tate, including all favorable inferences drawn from the evidence and [disregard] all evidence and inferences to the contrary." *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993). As to the challenge to the sufficiency of the evidence, our "review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *Id.*

The evidence regarding Defendant's intoxicated condition at the time of the collision included testimony or statements from three people in the Hide-a-way that Defendant was intoxicated.[6] The owner testified he refused to serve Defendant because "[h]e was highly intoxicated," and

another witness, who came face-to-face with Defendant, testified she noticed the strong smell of alcohol on Defendant. During cross-examination by Defendant's counsel of the trooper who investigated the incident, counsel conceded that Defendant left the bar "right before" the collision occurred. Other witnesses to the impact testified to Defendant's erratic driving and excessive speed.

There was other evidence that approximately an hour after the incident Defendant arrived at Rowe Furniture, where his wife and aunt attributed any unusual behavior to Defendant's being scared. However, another employee who physically witnessed the encounter testified Defendant appeared intoxicated. Given the evidence presented to the jury, a reasonable juror could infer that Defendant was under the influence of alcohol at the time he entered and left the Hide-a-way bar, and was still under the influence of alcohol immediately after he left the bar when the collision occurred.

 It is not for this court to reweigh the evidence or determine the credibility of witnesses. *See State v. Nichols,* 20 S.W.3d 594, 597 (Mo.App. S.D.2000). "Credibility of witnesses and the weight and value to be given their testimony are matters within the province of the jury and are not for review on appeal." *Id.* We find no basis to conclude that the jury's determination that Defendant was under the influence of alcohol at the time of the collision was based on mere speculation. *See State v. Yarber,* 5 S.W.3d 592, 593 (Mo.App. S.D.1999). The jury's guilty ver-

---

**5.** Defendant was sentenced as a persistent offender.

**6.** Two people present in the bar testified Defendant was intoxicated. The State also introduced into evidence the statement of a third person present in the bar (a gentleman

who passed away before trial). The trooper who investigated the crash testified that his assessment that drinking was involved in the collision was partially based on the statement of the deceased gentleman. No objections were made to this testimony.

dicts on the involuntary manslaughter counts were based on "logical and reasonable inferences based on the evidence presented." *Id.* Defendant's first point is denied.

■■■ Defendant's second point is that the trial court erred, abused its discretion and violated the best evidence rule in permitting Davidson to testify to the contents of the surveillance tape. "A trial judge is given wide latitude in determining whether evidence should be admitted or excluded." *State v. Minton,* 782 S.W.2d 134, 136 (Mo. App. E.D.1989). A trial court's evidentiary ruling will not be disturbed on appeal in the absence of an abuse of discretion. *Id.* "[T]o establish an abuse of discretion, a defendant must show that reasonable persons could not differ as to the propriety of the trial court's ruling." *State v. Gateley,* 907 S.W.2d 212, 221 (Mo.App. S.D.1995). When the evidentiary ruling involves the propriety of the best evidence rule, "a trial court's broad discretion is subject to reversal only in cases of clear abuse." *In re Estate of Looney,* 975 S.W.2d 508, 513–514 (Mo.App. S.D.1998).

■■ At issue here is whether it was appropriate for the trial court to allow Davidson to testify regarding the contents of the surveillance tape showing the meeting between Defendant and his wife approximately an hour after the collision. The tape itself was not shown to the jury. When the State began asking Davidson questions regarding what he saw on the tape, Defendant made an objection that Davidson's testimony was not the best evidence. The objection was overruled.

■■■ "[T]he best evidence rule applies only when the evidence is offered to prove the terms or contents of a writing or recording." *Cooley v. Dir. of Revenue,* 896 S.W.2d 468, 470 (Mo. banc 1995). The best evidence rule applies to videotapes as

well. *See State v. Hill,* 918 S.W.2d 287, 288 (Mo.App. E.D.1996). "[T]he best evidence rule does not exclude evidence based on personal knowledge." *Cooley,* 896 S.W.2d at 470. In the instant case, Davidson, however, only became aware of the contents of the videotape when he watched the surveillance tapes the next day; therefore, his knowledge did not exist independently of reviewing the tape. *See id.* His evidence was only secondary evidence and not primary evidence. *See id.; Looney,* 975 S.W.2d at 513. Under the best evidence rule, secondary evidence is only admissible "if the offering party demonstrates that the primary evidence is lost or destroyed, is outside the jurisdiction, is in the possession or control of an adversary, or is otherwise unavailable or inaccessible." *Looney,* 975 S.W.2d at 513. There is nothing in the record to indicate that the tape, the primary evidence, was unavailable to be shown to the jury. It was a violation of the best evidence rule for the trial court to allow Davidson to testify as to the contents of the videotape.

■■■ However, our review of this point does not end there. Defendant has the burden of showing that the improper admission of evidence was both in error and prejudicial. *See Minton,* 782 S.W.2d at 136. "To prove prejudice, ... [D]efendant must show 'a reasonable probability that in the absence of such evidence the verdict would have been different.' " *State v. Duncan,* 27 S.W.3d 486, 488 (Mo.App. E.D.2000). If evidence is found to be improperly admitted, it "should not be declared harmless unless it is harmless without question and it is clear the jury was not influenced by or disregarded the evidence." *Id.* Improperly admitted evidence is considered harmless "where the other evidence of guilt is overwhelming ... or where the improper evidence is not highlighted and is largely cumulative of other

evidence properly admitted." *State v. Hanway,* 973 S.W.2d 892, 897 (Mo.App. W.D.1998).

Davidson's testimony at best was cumulative of other evidence through which the jury could have reasonably inferred that Defendant was under the influence of alcohol at the time of the collision. We also find that the State did not highlight the improper testimony. In fact, Davidson's testimony largely counteracted itself, as he testified on direct and re-direct that Defendant appeared intoxicated and did not walk a straight line, but on cross-examination testified that he could not say for sure whether Defendant was intoxicated and noticed no staggering by Defendant.

Defendant has failed to meet his burden of showing the improperly admitted evidence was prejudicial. Defendant's second point is denied.

The judgment is affirmed.

PREWITT, J., and RAHMEYER, J., concur.