**STATE of Missouri, Plaintiff–Respondent,**

v.

**Karl W. MORGENROTH, Defendant–Appellant.**

No. 27686.

Missouri Court of Appeals, Southern District, Division II.

June 20, 2007.

Craig Allan Johnston, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Asst. Atty. Gen., Jefferson City, MO, for respondent.

JEFFREY W. BATES, Chief Judge.

Karl Morgenroth (Defendant) appeals from his conviction by a jury for driving while intoxicated (DWI) in violation of § 577.010.[1] In Defendant's first point, he contends the trial court violated § 577.021 by improperly admitting evidence that Defendant failed a portable breath test (PBT). Because this point has merit, we reverse and remand for a new trial.

## I. Factual and Procedural Background

On the evening of June 19, 2004, Christine Stark (Stark) was driving her car west on Highway 64. Her boyfriend, Christopher Hobius (Hobius), also was in the car. They had just left Bennett Springs State

---

1. All references to statutes are to RSMo (2000) unless otherwise indicated.

Park and were returning to Stark's home in Springfield, Missouri. She noticed a small white pickup truck sitting in the gravel parking lot of a convenience store. Defendant was the driver of that vehicle. As Stark approached, she had to slam on her brakes because Defendant pulled out in front of her. She tried to go around, but the truck sped up and would not allow her to pass. As she followed at about 35 miles per hour, the truck swerved slightly over the center line and then swerved slightly onto the shoulder of the road. She eventually passed the truck. Defendant sped up and got very close to the rear bumper of Stark's car. She increased her speed until she was exceeding the speed limit by about five miles per hour, but Defendant's truck remained behind her. When Stark slowed to give Defendant the opportunity to pass, he stayed about two feet behind Stark's car. At the intersection of Highway 64 and Highway 73, Stark stopped at a four-way stop. Defendant's truck bumped into Stark's car, causing a scratch. While Stark called 911, Hobius got out of the car and walked over to Defendant's truck. Stark heard yelling and saw Hobius reach into Defendant's truck. An altercation between Hobius and Defendant then ensued. Hobius returned to Stark's vehicle. As Stark continued to talk with the 911 operator, Defendant began blaring his horn. He backed up and pulled into the parking lot of a nearby convenience store. Stark did the same.

Missouri State Highway Patrol Trooper Andrew Dill (Trooper Dill) arrived at the convenience store around 9:00 p.m. After speaking with Stark, Trooper Dill approached Defendant and stood two to four feet from him. He was "very talkative and excited" and said he had been struck in the jaw by Hobius' fist. There were several small abrasions on Defendant's left cheek. Trooper Dill smelled the strong odor of alcoholic beverages on Defendant and observed that his eyes were watery and bloodshot. Defendant admitted he had been drinking and said he had consumed two drinks since 3:00 p.m. Trooper Dill asked Defendant to perform some field sobriety tests.

In the first test, Trooper Dill asked Defendant to count backwards from 85 to 72. The purpose of this test is to ascertain whether a person can count backwards and remember when to stop counting. Defendant successfully counted from 85 to 72, but he stopped at 81 and again at 72 to ask how far he was supposed to count. Therefore, Trooper Dill regarded that as a failure of the test. In the second test, Defendant was asked to recite the alphabet from A to Z. He did so successfully. The third test was the horizontal gaze nystagmus (HGN) test. Defendant failed this test because he showed all three indicators of intoxication per eye. The fourth test was the one-legged stand, which requires the subject to elevate one foot approximately six inches off the ground and maintain that position for 30 seconds. Trooper Dill made Defendant perform the test using each of his feet. Defendant was able to successfully perform the test while standing on his right foot. Because Defendant was unable to keep his right foot off the ground for 30 seconds while standing on his left foot, however, Trooper Dill determined that Defendant had failed the test. The fifth test was the walk-and-turn maneuver. In this test, the subject initially is asked to stand with the toe of his left foot touching the heel of his right foot while the officer explains the test. The subject then takes nine heel-to-toe steps, turns and takes nine heel-to-toe steps back in a straight line. If the subject steps off the line or loses his balance three or more times, that is regarded as a failure of the test. During the test, Defendant touched his feet heel-to-toe. He did not start be-

fore the instructions were finished, lose his balance while walking, stop to steady himself or step off the line. Nevertheless, Trooper Dill determined that Defendant failed the test because he was unable to stand heel-to-toe while the instructions were being explained, and he was not able to properly turn without losing his balance. The sixth test was the PBT. Defendant failed this test because the PBT showed the presence of alcohol in his blood.

Based on these field sobriety tests, Trooper Dill determined that Defendant was intoxicated and arrested him for DWI. Defendant was transported to jail and read his *Miranda* rights.[2] When Trooper Dill asked Defendant to submit to a chemical test of his blood pursuant to Missouri's implied consent law, he asked to speak with his attorney.[3] Trooper Dill found a phonebook and dialed the attorney's number on three different occasions, but there was no answer. After waiting 21 minutes, Trooper Dill asked Defendant to submit to a breathalyzer test. Defendant refused to do so.

In September 2004, Defendant was charged by information with DWI in violation of § 577.010. His jury trial took place in January 2006. During the State's case, Stark and Trooper Dill were called as witnesses and testified to the facts already summarized above. When Trooper Dill was asked about giving the PBT as the sixth field sobriety test, defense counsel immediately objected. The following then transpired at a sidebar conference:

[Defense counsel]: Judge, this evidence is not admissible as evidence of intoxication. This is a preliminary test, admissible for purposes of an administrative hearing, so that they can go forward

with the hearing as probable cause of an arrest. But its not evidence.

THE COURT: Well, I think that goes to weight, not admissibility. I think it is admissible. Overruled.

After counsel's objection was overruled, Trooper Dill gave the following testimony:

Q. [by prosecutor] The sixth test then was a portable breath test, is that what you described?

A. Its [sic] described as a portable breath test, or a preliminary breath test.

Q. And did that test show the presence of alcohol in [Defendant's] blood?

A. Yes.

Q. And is that a thing that they blow into?

A. Yes.

Q. Ok. And did [Defendant] agree to blow into that machine at the scene?

A. Yes.

Q. Now, that is only a preliminary test, is that correct?

A. Yes.

Q. Now, after [Defendant] performed these field sobriety tests, what did you do?

A. I determined that he was intoxicated, and I placed him under arrest for driving while intoxicated.

After the close of all of the evidence, the court gave its instructions to the jury. Instruction No. 8 was the verdict-director. It contained only two factual issues for the jurors to decide: (1) whether Defendant operated a motor vehicle; and (2) if so, whether he did so while in an intoxicated condition. *See* MAI–CR 3d 331.02.

In the State's closing argument, the prosecutor correctly noted that Defen-

---

2. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Missouri's implied consent law is contained in §§ 577.020–.041.

dant's operation of a motor vehicle was undisputed so, "[t]he only question is did he do so in an intoxicated condition?" During the course of the argument, the prosecutor stated:

Here, as you consider everything, its [sic] clear that [Defendant] was intoxicated. He was given six field sobriety tests. Now, he did pass one of those tests, he could say his alphabet. But all the rest of those tests, the counting backwards, the horizontal gaze nystagmus, the walk and turn, one legged stand, portable breath test, he failed them all.

Later, the prosecutor reminded the jurors that Defendant had refused to submit to the breathalyzer test at the police station. The opening portion of the State's argument concluded with this statement:

Ladies and gentlemen, *the reason that [Defendant] didn't submit to that final test* was because he knew that it would show his exact level of intoxication, or blood alcohol level. It was all within his power, and clearly, when you consider why he would not submit to that, its clear. He knew that he was intoxicated that evening.

(Italics added.) In the State's rebuttal argument, the prosecutor returned to this theme by reminding the jurors that field sobriety tests were used "[t]o help an officer determine if a person is intoxicated" and that "[w]e have many indications that [Defendant] was intoxicated. Failing five out of six field sobriety tests." The jury convicted Defendant of driving while intoxicated.

Thereafter, Defendant filed a timely motion for new trial. The first paragraph alleged that the trial court erred by admitting the PBT evidence because the prosecution told the jurors that Defendant's failure of this test indicated that he was intoxicated. The motion was overruled, and this appeal followed.

## II. Discussion and Decision

■ In Defendant's first point on appeal, he contends the trial court abused its discretion in admitting Trooper Dill's testimony concerning the PBT. Defendant argues that: (1) the evidence concerning his failure of the PBT was erroneously admitted in violation of § 577.021 for the purpose of showing his blood alcohol content; and (2) the error was prejudicial because this evidence was used to prove his intoxication. The State counters that: (1) this evidence was admissible to show probable cause for Defendant's arrest; and (2) in any event, any error was harmless because there was overwhelming evidence of Defendant's intoxication.

■ The first issue we must address is whether the trial court erred in admitting Trooper Dill's testimony that Defendant failed the PBT. We review that ruling for an abuse of discretion. *State v. Duncan,* 27 S.W.3d 486, 488 (Mo.App.2000). As a general proposition, a jury can consider a defendant's failure to pass field sobriety tests in determining whether he or she operated a motor vehicle while intoxicated. *See, e.g., State v. Keeth,* 203 S.W.3d 718, 724 (Mo.App.2006); *State v. Lawson,* 84 S.W.3d 170, 172–73 (Mo.App. 2002); *State v. Knifong,* 53 S.W.3d 188, 193–94 (Mo.App.2001); *State v. Brown,* 996 S.W.2d 719, 728 (Mo.App.1999); *State v. Teaster,* 962 S.W.2d 429, 431–32 (Mo. App.1998). The admissibility of a PBT, however, is narrowly restricted by statute. The relevant provision states:

Any state, county or municipal law enforcement officer who has the power of arrest for violations of section 577.010 or 577.012 and who is certified pursuant to chapter 590, RSMo, may, prior to arrest, administer a chemical test to any person

suspected of operating a motor vehicle in violation of section 577.010 or 577.012. A test administered pursuant to this section shall be admissible as evidence of probable cause to arrest and as exculpatory evidence, but shall not be admissible as evidence of blood alcohol content. The provisions of section 577.020 shall not apply to a test administered prior to arrest pursuant to this section.

§ 577.021 RSMo Cum.Supp. (2003). Thus, a positive result on a PBT is inadmissible as evidence of a defendant's blood alcohol content. *State v. Pike*, 162 S.W.3d 464, 469 (Mo. banc 2005). One important reason for this limitation is the last sentence of the statute, which exempts a PBT from the "Department of Health regulations that govern breath analysis tests admissible to prove that a defendant was intoxicated." *Duncan*, 27 S.W.3d at 488.[4] In *Duncan*, the eastern district of this Court concluded, and we agree, that "the legislature has clearly forbidden the use of the PBT to prove intoxication." *Id.* This statute embodies the General Assembly's determination that a PBT is "too unreliable" to be used for this purpose. *Id.*

The State argues that the evidence concerning the PBT was admitted to prove Trooper Dill had probable cause to arrest Defendant.[5] We find this argument disingenuous because the State has failed to cite any relevant authority explaining how the existence of probable cause to arrest was a question of fact for the jury to decide in this criminal case.[6] The State's reliance on *State v. Stottlemyre*, 35 S.W.3d 854 (Mo.App.2001), is misplaced. There, the western district of this Court carefully delimited the scope of its holding by noting:

> Mr. Stottlemyre does not challenge the admissibility of the portable breath test results on any ground other than his assertion that the State was required to show that the test met the standards of § 577.026 in order to lay a proper foundation. Specifically, Mr. Stottlemyre does not challenge the admissibility of the test results based upon the relevancy of the issue of probable cause to arrest. Therefore, this court is ruling only on the narrow issue raised by Mr. Stottlemyre, and does not decide whether the test results were inadmissible on any other bases.

*Id.* at 861 n. 4. Thus, *Stottlemyre* is inapposite and does not support the State's argument. Furthermore, the prosecutor pointed out during closing argument that the only disputed issue was whether Defendant had operated his motor vehicle in an intoxicated condition. The jurors were told that they could consider Defendant's failure of the field sobriety tests, including the PBT, as proof that he was intoxicated. The use of the PBT results for this purpose violated the statutory prohibition contained in § 577.021. *See Duncan*, 27 S.W.3d at 488. Accordingly, the trial court abused its discretion in admitting Trooper

---

4. Section 577.021 was substantially rewritten after the date of Defendant's trial, but no change was made to the statutory provisions limiting the admissibility of a PBT and exempting that test from the requirements of § 577.020. *See* § 577.021.3 RSMo Cum. Supp. (2006).

5. The only other possible ground for admission is not applicable here because Defendant did not offer the results of the PBT as exculpatory evidence.

6. In civil actions for false arrest or false imprisonment, the issue of an officer's probable cause to arrest can be a question of fact for the jury to decide when justification is asserted as an affirmative defense. *See, e.g., Blue v. Harrah's North Kansas City, LLC*, 170 S.W.3d 466, 480 (Mo.App.2005); *Parrott v. Reis*, 441 S.W.2d 390, 392 (Mo.App.1969).

Dill's testimony that Defendant failed the PBT.

■■■■ That determination, however, does not end our review. Defendant bears the burden of showing that he was prejudiced by the error. *State v. Teague*, 64 S.W.3d 917, 922–23 (Mo.App.2002). To prove prejudice warranting a reversal, he must show the existence of a reasonable probability "that the jury's verdict would have been different but for such improperly admitted evidence." *State v. Robinson*, 111 S.W.3d 510, 514 (Mo.App.2003).[7] The State argues that the error was harmless because the evidence of Defendant's guilt was overwhelming. As we noted in *State v. Russell*, 872 S.W.2d 866 (Mo.App.1994), however, "improperly admitted evidence should not be declared harmless unless it can be said to be harmless without question and the record demonstrates the evidence did not influence the jury or the jury disregarded it." Id. at 869. We cannot reach that conclusion here.

Defendant's erratic driving was as consistent with "road rage" as it was with intoxication. When questioned by Trooper Dill, Defendant only admitted to having consumed two drinks during the previous six hours. He was given six field sobriety tests. He successfully passed the alphabet test. He was able to substantially complete the walk-and-turn, one-legged stand and the backwards counting tests. Defense counsel vigorously cross-examined Trooper Dill about the correctness of his subjective conclusion that Defendant had failed these three tests. Defendant did fail the HGN test. The jury was improperly told that Defendant had failed the PBT. Of all the field sobriety tests administered to Defendant, however, only the PBT lacked any element of subjective scoring by Trooper Dill. Therefore, the jury's knowl-

edge that Defendant had failed the PBT tended to corroborate Trooper Dill's conclusions concerning Defendant's failure of the other four field sobriety tests. Finally, Trooper Dill was permitted to testify that: (1) Defendant had voluntarily agreed to take the PBT; (2) it showed the presence of alcohol in his blood; (3) immediately after completing the PBT, Trooper Dill determined that Defendant was intoxicated and arrested him; and (4) he refused to take a breathalyzer test at the police station. From this evidence, the jury could have inferred that, to both Trooper Dill and Defendant, the positive result on the PBT proved he was intoxicated. The prosecutor's statement in closing argument that the only purpose for the "final test" was to show Defendant's "exact level of intoxication" tended to strongly reinforce that inference.

In sum, there is a reasonable probability that the jury would have reached a different result if the PBT results had not been admitted. Accordingly, the trial court's erroneous admission of this evidence prejudiced Defendant. *See State v. Duncan*, 27 S.W.3d 486, 489–90 (Mo.App.2000). Defendant's first point is granted. We reverse the judgment against Defendant and remand the case for a new trial.

In Defendant's second point, he contends the trial court erred in allowing the State to present evidence that, after Defendant was arrested and read his *Miranda* rights, he asked to speak to a lawyer before deciding whether to submit to a chemical test of his blood alcohol content pursuant to Missouri's implied consent law. The only relief requested in connection with this alleged error is a reversal and remand for a new trial, a result already achieved via our disposition of Point I.

---

7. When evidence is improperly admitted in a jury trial, an appellate court is required to assume that the jury considered the evidence in reaching its verdict. *Id.*

Under these circumstances, it is neither necessary nor advisable to address Point II because the record on retrial may not be the same as the one presently before us in terms of the precise evidence offered, objections made and rulings issued. *See Burks v. Leap,* 413 S.W.2d 258, 268 (Mo. 1967). "Upon retrial, should the criticized evidence be offered again, the parties and the court will have the benefit of the research reflected in their briefs here." *Carder v. Eaton,* 629 S.W.2d 553, 555 (Mo. App.1981).

The judgment is reversed, and the cause is remanded for a new trial.

BARNEY and LYNCH, JJ., concur.