**STATE of Missouri, Plaintiff–Respondent,**

v.

**Steven Douglas EISENHOUR, Defendant–Appellant.**

**No. SD 32441.**

Missouri Court of Appeals, Southern District, Division Two.

Oct. 21, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 12, 2013.

Craig A. Johnston, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and Gregory L. Barnes, Assistant Attorney General, Jefferson City, MO, for Respondent.

GARY W. LYNCH, J.

Steven Douglas Eisenhour ("Defendant") appeals his conviction, following a jury trial, of the class D felony of driving while intoxicated ("DWT") in violation of section 577.010.1.[1] Defendant was sentenced as a persistent offender by the court to four years in prison.[2] On appeal, Defendant claims the trial court erred in excluding evidence that his pre-arrest portable breathalyzer test ("PBT") numerical result was .002. Finding no error as asserted by Defendant, we affirm.

### Factual and Procedural Background

Before trial, the trial court considered the State's motion in limine to exclude "evidence of blood alcohol content from [PBT] results." The State contended that section 577.021.3 "expressly limits admissibility of results of [PBTs] from being used as evidence of blood alcohol content[,]" "[t]he numerical value provided by [PBTs] represents blood alcohol content[,]" and, therefore, "evidence of a numerical result in this case purporting to represent Defendant's blood alcohol content is inadmissi-ble." Defendant countered that "the statute is clear that this [PBT] can be used for exculpatory evidence[,]" the statute does not "say that the numerical score is inadmissible[,]" and it was Defendant's position "that below a .08 is exculpatory." The trial court sustained the State's motion in limine and directed that "there shall be no mention of . . . what the test results were in this case on the PBT."

During the trial, nothing about the PBT or anything related to it was mentioned in the presence of the jury. Viewed in the light most favorable to the verdict, see State v. McFadden, 391 S.W.3d 408, 417 (Mo. banc 2013), the evidence and reasonable inferences therefrom adduced before the jury at trial established the following facts.

On February 20, 2010, Deputy Jason Kent of the Jasper County Sheriff's Office was transporting a prisoner from the Newton County jail back to the Jasper County jail, when he observed Defendant's vehicle in front of him swerving a little. Up ahead of Defendant's vehicle, the lights from a highway patrol vehicle that had another automobile pulled over came into view. In response, Defendant's vehicle swerved a little, slowed down and "almost stopped in the middle of the road," then pulled off to the side and "kind of stopped." Defendant then pulled back onto the road and traveled slowly until he reached the point where the patrol vehicle was located. After passing the patrol vehicle, Deputy Kent continued to observe that Defendant was unable to hold his lane and his vehicle was swerving in the lane; Defendant's vehicle kept crossing the center line and swerving over onto the shoulder of the road. Once he entered Jasper County,

---

1. All statutory references are to RSMo Cum. Supp.2009.

2. Before trial commenced, the trial court found beyond a reasonable doubt that Defendant was a persistent offender under section 577.023.

Deputy Kent radioed and asked dispatch to direct another deputy to stop the vehicle; Deputy Kent could not because he had an inmate with him. Based on his training and experience, Deputy Kent believed the driver of Defendant's vehicle could be impaired.

Deputy Kent continued following Defendant's vehicle—which was still swerving, crossing the center line, slowing, and hitting its brake lights frequently—until Deputy Adam Blankenship of the Jasper County Sheriff's Office arrived and pulled it over.

When Deputy Blankenship approached the vehicle after initiating the traffic stop, he observed three people in the vehicle; Defendant was the driver. As Deputy Blankenship talked with Defendant, he could smell the odor of alcohol, which appeared to come from Defendant's breath. Deputy Blankenship observed Defendant's pupils were very constricted, whereas normally at night they would be dilated due to the lack of light. When Deputy Blankenship asked for Defendant's driver's license, Defendant handed him a Missouri ID. card instead. Deputy Blankenship asked Defendant how much he had drunk, and Defendant said three beers.

Defendant failed three field sobriety tests. During the horizontal gaze nystagmus test, Defendant's pupils stayed constricted and did not react at all to the light. Moreover, Defendant's eyes did not smoothly follow Deputy Blankenship's finger from side to side; there was involuntary jerking of the eyes, which indicated possible impairment. According to Deputy Blankenship, if there was no impairment, the eyes would be steady. Both of Defendant's eyes had nystagmus, or involuntary jerking.

Defendant also failed the walk-and-turn test. Defendant said he understood the instructions but did not perform the test in accordance with the instructions. Defendant started before he was told to go. Defendant stopped completely to steady himself, and lost his balance several times, stepping off the line. Defendant also used his arms for balance, contrary to instructions. Defendant failed to maintain a heel-to-toe gait. Defendant took the incorrect number of steps. Finally, Defendant did not do a correct turn at the end of the line and did not walk back down the line as instructed; instead, Defendant walked to the side in a completely different and opposite direction. Defendant's performance on the walk-and-turn test was an indication of intoxication.

The third field sobriety test administered was the one-legged stand test. Defendant was unable to complete this test. Defendant swayed while balancing, put his arms out to maintain his balance instead of leaving them down at the sides as instructed, and put his foot on the ground instead of keeping it raised.

Based upon Defendant's performance on the standard tests, his admission of consuming alcohol, the smell of alcohol on his breath, and the way he had been driving as described by Deputy Kent, Deputy Blankenship believed Defendant had been driving while impaired.

Deputy Blankenship asked Defendant if he had taken anything besides alcohol; Defendant stated he had taken two blue pills but did not know what they were. Deputy Blankenship arrested Defendant for driving while intoxicated and driving while revoked.

Defendant was handed over to the backup officer on the scene, Detective Chad Carr of the Jasper County Sheriff's Office. Detective Carr transported Defendant to the station and intended to conduct an interview for an Alcohol Influence Report and perform post-arrest implied consent

tests for blood-alcohol content.[3] After Detective Carr read Defendant the implied consent warning, he asked Defendant for a breath sample and a urine sample. Defendant had been informed that if he refused to take the test, his driver's license would be immediately revoked for one year and that evidence of his refusal to take the test may be used against him in a prosecution in a court of law. Nevertheless, Defendant refused to provide a breath sample or a urine sample.

While at the station, Detective Carr asked Defendant if he had anything to drink that night, and Defendant said two to three beers. Detective Carr asked Defendant if he had ingested other drugs; Defendant said that between 5:30 and 6:00 p.m., he had taken two pain pills and also had a cigarette worth of K2, a synthetic cannabis or marijuana that, at the time, was legal to consume in the State of Missouri. Defendant said he had ingested the two or three beers at 8:30 p.m. The interview took place shortly before 11:00 p.m.

At the conclusion of Deputy Blankenship's testimony, immediately before the State rested and without any further argument on the issue, Defendant made an offer of proof that, if allowed, his cross examination of Deputy Blankenship would have included the following:

Q  (by defense counsel) After the field sobriety test you asked [Defendant] to give a preliminary breath test, correct?

A (by Deputy Blankenship) Yes.

Q  And he was able to give you a sample?

A Correct.

Q  What was the result of that?

A Point zero zero two.

Q  What's the presumptive legal limit in Missouri?

A Point zero eight.

    ✳    ✳    ✳

Q  (by prosecutor) This was on your portable breath test equipment that you carry with you in your car?

A Yes.

Q  It's not—we're not talking about the Data Master that's calibrated and certified to be accurate down at the station?

A Correct.

Q  This is a tool that you use in determining probable cause for arrest?

A Correct.

At the conclusion of the offer of proof, the trial court stated, "The Court stands by its earlier ruling."

Defendant presented no evidence.

Twelve minutes after leaving the courtroom to deliberate, the jury returned a verdict finding Defendant guilty of driving in an intoxicated condition under the influence of a combination of alcohol and a drug or drugs. The trial court sentenced Defendant as a persistent offender to four years in prison.

Defendant timely appeals, claiming that the trial court's exclusion of Deputy Blankenship's testimony that Defendant's PBT result was .002 was an abuse of discretion because it denied him

his rights to due process, a fair trial, to compulsory process, and to present a defense, as guaranteed by the 6th and 14th Amendments to the United States Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution, in that this evidence was relevant and material, and it was admissible under § 577.021.3 as exculpatory evidence[.]

---

**3.** *See* section 577.020.

### Standard of Review

" 'Generally, a trial court's decision to exclude testimony is reviewed for an abuse of discretion, granting substantial deference to the trial court's decision.' " *State v. Mort*, 321 S.W.3d 471, 483 (Mo.App.2010) (quoting *Eagan v. Duello*, 173 S.W.3d 341, 349 (Mo.App.2005)). This general rule does not necessarily apply, however, "where an evidentiary principle or rule is violated, especially in criminal cases." *State v. Walkup*, 220 S.W.3d 748, 756 (Mo. banc 2007). The Supreme Court of Missouri does not have the constitutional power to promulgate rules of evidence. Mo Const. art. V, § 5. Rather, Missouri's evidentiary principles and rules "come from various sources: statutes, the common law, and the Constitution." *Walkup*, 220 S.W.3d at 756–57. Even though a trial court may erroneously violate such a principle or rule, however, our inquiry does not end there. "Appellate courts review evidentiary errors to ascertain whether they were prejudicial, that is, whether the errors are more likely than not to have affected the outcome." *Id.* at 757.

### Discussion

■ Defendant asserted to the trial court and now asserts on appeal that the numerical result of the PBT was expressly admissible under section 577.021.3 as exculpatory evidence. This is so, Defendant argues, because "it showed that his blood alcohol content was well under the presumptive level of intoxication (.08)." [4] The State counters, as it did in the trial court, that section 577.021.3 only makes a PBT admissible to show either the *presence* of alcohol in the blood to support probable cause to arrest or the *absence* of alcohol in the blood to exculpate a defendant, but it

expressly prohibits the use of a PBT to prove "the percentage of blood alcohol content" because it is unreliable for that purpose.

Section 577.021 provides, in pertinent part:

1. Any state, county or municipal law enforcement officer who has the power of arrest for violations of section 577.010 or 577.012 and who is certified pursuant to chapter 590 may, prior to arrest, administer a chemical test to any person suspected of operating a motor vehicle in violation of section 577.010 or 577.012.

\*   \*   \*

3. A test administered pursuant to this section shall be admissible as evidence of probable cause to arrest and as exculpatory evidence, but shall not be admissible as evidence of blood alcohol content. The provisions of sections 577.019 and 577.020 shall not apply to a test administered prior to arrest pursuant to this section.

This section "specifically concerns chemical tests administered prior to arrest that are used to establish probable cause for arrest and not as evidence of blood alcohol content." *State v. Stottlemyre*, 35 S.W.3d 854, 860 (Mo.App.2001). The PBT administered to Defendant by Deputy Blankenship was such a chemical test. *See id.*

■ Several cases have addressed the admissibility of a PBT in the context of "evidence of probable cause to arrest" under section 577.021.3. *See, e.g., State v. Morgenroth*, 227 S.W.3d 517 (Mo.App. 2007); *Stottlemyre*, 35 S.W.3d 854; *State v. Duncan*, 27 S.W.3d 486 (Mo.App.2000). In that context, the use of the PBT is "strictly limited by statute." *State v. Robertson*, 328 S.W.3d 745, 751 (Mo.App.2010)

---

4. Other reasons for admission asserted by Defendant on appeal were not raised in the trial court. As such, they were not properly pre-

served for review. *State v. Tisius,* 92 S.W.3d 751, 767 (Mo. banc 2002).

(quoting *Duncan,* 27 S.W.3d at 488). A *positive* PBT result is admissible to show the presence of alcohol "for determining whether there is probable cause for an arrest[.]" *State v. Pike,* 162 S.W.3d 464, 469 (Mo. banc 2005) (citing section 577.021). PBT results, however, "are inadmissible as evidence of blood alcohol content." *Pike,* 162 S.W.3d at 469; *Stottlemyre,* 35 S.W.3d at 858 (results are not used to establish blood alcohol content in determining whether a person is intoxicated). "One important reason for this limitation is the last sentence of the statute, which exempts a PBT from the 'Department of Health regulations that govern breath analysis tests admissible to prove that a defendant was intoxicated.'"[5] *Morgenroth,* 227 S.W.3d at 522 (quoting *Duncan,* 27 S.W.3d at 488). In addition, "the requirements for the validity of chemical tests contained in § 577.026 do not apply to the administration of chemical tests conducted under § 577.021."[6] *Stottlemyre,* 35 S.W.3d at 860. Likewise, "proof of calibration of the portable breathalyzer machine was not required for admissibility of the results of the [PBT] under section 577.021." *State v. Robertson,* 328 S.W.3d 745, 751 (Mo.App.2010). The provisions of section 577.021 demonstrate that " 'the legislature has clearly forbidden the use of the PBT to prove intoxication.' " *Morgenroth,* 227 S.W.3d at 522 (quoting *Duncan,* 27 S.W.3d at 488). "This statute embodies the General Assembly's determination that a PBT is 'too unreliable' to be used for this purpose." *Morgenroth,* 227 S.W.3d at 522.

Neither Defendant nor the State, however, has pointed us to any case that has previously addressed the admissibility of the PBT as "exculpatory evidence" under section 577.021.3, and we have not found any. In that regard, this is a case of first impression.

Defendant frames the issue before us as: Whether the later provision in [577.021.3]—that the result "shall not be admissible as evidence of blood alcohol content"—trumps the "exculpatory evidence" provision within the same sentence, making inadmissible evidence that the .002 result or that [Defendant's] PBT result was well below the limit where there is a presumption of intoxication, .08?

The State argues the positive of this statutory construction issue by claiming, as it did in the trial court, that this construction would make the PBT

---

**5.** The last sentence of section 577.021.3 provides, "The provisions of sections 577.019 and 577.020 shall not apply to a test administered prior to arrest pursuant to this section." Section 577.020.3 provides:

Chemical analysis of the person's breath, blood, saliva, or urine to be considered valid pursuant to the provisions of sections 577.019 to 577.041 shall be performed according to methods approved by the state department of health and senior services by licensed medical personnel or by a person possessing a valid permit issued by the state department of health and senior services for this purpose.

**6.** Section 577.026 provides:
1. Chemical tests of the person's breath, blood, saliva, or urine to be considered valid under the provisions of sections 577.020 to 577.041, shall be performed according to methods and devices approved by the state department of health and senior services by licensed medical personnel or by a person possessing a valid permit issued by the state department of health and senior services for this purpose.
2. The state department of health and senior services shall approve satisfactory techniques, devices, equipment, or methods to conduct tests required by sections 577.020 to 577.041, and shall establish standards as to the qualifications and competence of individuals to conduct analyses and to issue permits which shall be subject to termination or revocation by the state department of health and senior services.

permissible for determining the presence [as probable cause evidence] or absence [as exculpatory evidence] of alcohol, but not the numerical value expressed as a percentage of the blood alcohol content itself; [7] the legislature has excluded its admission as evidence of a specific numerical value because it is concluded that the test "is too unreliable" to be used for that purpose.[8]

The State asserts that this construction would be consistent with the language and holdings in *Robertson* and *Duncan, supra.*

In support of the negative of this issue, Defendant asserts a very narrow argument relying almost exclusively upon *Elery v. Commonwealth*, 368 S.W.3d 78 (Ky. 2012).[9] Defendant's reliance on *Elery*,

however, is misplaced because it was a not a DWI prosecution, which Kentucky refers to as a "DUI" prosecution, and the Kentucky Supreme Court expressly refused to consider the issue before it in the context of a "DUI" case.[10] *Id.* at 94 n. 8. Elery was convicted of murder, tampering with physical evidence, and violating a protective order. *Id* at 82. On appeal, he argued "that the trial court erred in barring the admission of the [0.283%] results of a portable breathalyzer test (PBT) administered when he first began to speak to the police" because it showed "he had been extremely intoxicated at the time he confessed to the crimes." *Id.* at 93. The trial court had ruled that the test results were inadmissible under KRS 189A.104(2).[11]

---

7. The State relies upon 19 Mo.Code Regs. § 25.30.011(2)(A) for the definition of "blood alcohol content." It provides, "Blood alcohol content is the alcohol content of blood expressed as a percentage based on grams of alcohol per one hundred (100) milliliters of blood or grams of alcohol per two hundred ten (210) liters of breath." Mo.Code Regs. Ann. tit. 19, § 25–30.011(2)(A). Similarly, section 577.037.2 provides, "Percent by weight of alcohol in the blood shall be based upon grams of alcohol per one hundred milliliters of blood or grams of alcohol per two hundred ten liters of breath."

8. Defendant did not directly address this construction in his initial brief on appeal and did not file a reply brief addressing it when the State raised it in its responding brief.

9. Indeed, Defendant's entire argument on this issue is confined to the following single paragraph:

When the Kentucky Supreme Court examined one of its statutes concerning PBT, which made such results "inadmissible in court," that court noted that the statute was "designed to limit the Commonwealth's proof in DUI cases, so as to require proof by the best tests results, not to limit a defendant's proof in any criminal case in which alcohol may be a factor in his defense." *Elery v. Commonwealth*, 368 S.W.3d 78, 94

(Ky.2012). This Court should interpret the statute in a similar manner—while the State cannot use the PBT in order to prove that Appellant was intoxicated, *Morgenroth, supra,* the defense can use such PBT results when the results are "exculpatory," § 577.021.3 ("favorable," *Phillips,* 940 S.W.2d at 516).

10. Chapter 189A of the Kentucky Revised Statutes is titled "Driving Under the Influence." It appears to be Kentucky's counterpart to those sections of Chapter 577, RSMo, applicable to the offense of "Driving While Intoxicated."

11. KRS 189A.104 provides:

(1) The only alcohol or substance testing that is subject to refusal or enhancement of penalties provided for in this chapter is:
a. Breath analysis testing by a machine installed, tested, and maintained by the Commonwealth for that specific purpose or detention facility;
b. Blood or urine testing at the request of the officer at a police station, detention facility, or medical facility; or
c. Combination of tests required in paragraphs (a) or (b) of this subsection.
(2) The results of any breath analysis by an instrument other than one specified in subsection (1) of this section shall be inadmissible in court.

*Elery,* 368 S.W.3d at 93.

Assuming that the PBT was otherwise admissible by proper foundation under its Rules of Evidence, *id.* at 94 and n. 9,[12] the Kentucky Supreme Court concluded "that the statute's bar on the admission of PBT results in some circumstance does not bar a defendant who seeks to admit that result as part of a defense in a *non-DUI prosecution* [,]" *id.* at 95 (emphasis added).[13] The court noted in footnote 8, "It is possible that the statute, while limited, applies to all DUI prosecutions, not just those involving an enhancement or refusal to test. However, we need not reach that ultimate question in this case, *as this case was not a DUI prosecution of any type.*" *Id.* at 94, n. 8 (emphasis added). Because Defendant here was convicted of DWI, which is comparable to Kentucky's DUI, *see* footnote 10 of this opinion, *Elery* provides no analytical support or persuasive authority for Defendant's claim that the statutory bar to admission of "evidence of blood alcohol content" in section 577.021.3 does not apply to "exculpatory evidence" as that term is used in that subsection. As such, we reject Defendant's argument.

Defendant makes no other statutory construction argument or arguments supporting the negative of this issue. "It is fundamental that on appeal the trial court's action is presumed to be correct, and the burden is on the appellant to establish that the action was erroneous." *State v. Cella,* 32 S.W.3d 114, 117 (Mo. banc 2000). An appellate court cannot " 'become an advocate for the appellant by speculating . . . on arguments that have not been made.' " *State v. Hardin,* 229 S.W.3d 211, 213 (Mo.App.2007) (quoting *Pattie v. French Quarter Resorts,* 213 S.W.3d 237, 239 (Mo.App.2007)). The trial court here determined that the limitation in section 577.021.3—"but shall not be admissible as evidence of blood alcohol content"—bars the admission of the numerical value of the positive result of the PBT "as evidence of blood alcohol content." Defendant has failed to present us with a cogent and persuasive argument otherwise. We have no alternative other than to find no error in the trial court's determination and to deny Defendant's point.

### *Decision*

The trial court's judgment is affirmed.

DON E. BURRELL, JR., and MARY W. SHEFFIELD, JJ., Concurs.

12. We observe that Defendant's offer of proof here did not include any foundational evidence other than that the PBT was a chemical test administered prior to arrest.

13. The court ultimately held, however, that the exclusion of the PBT was harmless error. *Elery,* 368 S.W.3d at 95.