

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED111611 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Lewis County |
| v. | ) | Case No. 17LE-CR00231-01 |
| | ) | |
| JAMES KIP WILSON, | ) | Honorable Matthew J. Wilson |
| | ) | |
| Appellant. | ) | Filed:  June 25, 2024 |

## Introduction

James Kip Wilson (Wilson) appeals from the judgment and sentence of the trial court convicting him of one count of driving while intoxicated.  Wilson argues the trial court erred in finding him to be a habitual offender and in admitting certain evidence, and he challenges the sufficiency of the evidence supporting his conviction.  We affirm.

## Background

The State charged Wilson in 2017 as a prior and persistent offender and a habitual offender with one count of the class B felony of driving while intoxicated (DWI), pursuant to Section 577.010.2.[1]  In November of 2018, Wilson filed a first motion to suppress, as relevant to the issues raised on appeal, the results of a portable breath test (PBT) and field sobriety tests administered before his arrest (2018 motion to suppress).  In Wilson's

---

[1] All statutory references are RSMo. cum. supp. 2017, unless otherwise indicated.

subsequent suggestions in support of his 2018 motion to suppress, he raised two additional claims, requesting the trial court suppress both (1) "all statements and answers provided to questions on the [alcohol influence report (AIR)] form" that Wilson made at the jail in response to law enforcement interrogation after Wilson had requested to speak with an attorney, and (2) evidence that he refused to take a breath test because he was not granted privacy to speak with his attorney about whether he should refuse the breath test.[2]  The trial court denied Wilson's 2018 motion to suppress.  The trial court, however, later modified its ruling regarding the admission of the results of the PBT, clarifying that it would allow evidence that the PBT was administered and was positive for alcohol, but that the numerical result of the PBT was inadmissible.

In 2022, Wilson filed a motion in limine that sought to prevent the admission of two issues relevant to this appeal.  First, Wilson sought in the written motion, supplemented by a second oral motion in limine at the hearing on the motion, to prevent the State from offering evidence of Wilson's prior bad acts of operating a vehicle without a valid driver's license or insurance.  The trial court allowed reference to the arresting officer's conversation with Wilson about his lack of driver's license and registration but found inadmissible any reference to Wilson having had his driver's license revoked or being on probation.  Second, Wilson sought in the motion in limine, supplemented by a second motion to suppress (2022 motion to suppress), to prevent the State from admitting (1) any statements made by Wilson in response to questioning that occurred after Wilson had requested an attorney, and (2) Wilson's refusal to submit to a breath test made after he was not granted privacy to consult with his attorney about whether to submit to a breath test.

_____

[2] Section 577.041.3 provides that "[i]f a person when requested to submit to any test … requests to speak with an attorney, the person shall be granted twenty minutes in which to attempt to contact an attorney."

2

At a hearing on the 2022 motions, the trial court heard testimony from the arresting sergeant for the Missouri State Highway Patrol (the Sergeant) and Wilson. After the hearing in which Wilson stated he was not able to reach an attorney, Wilson's counsel voluntarily withdrew the 2022 motion to suppress, stating, "I do not believe we can ethically ask the court to continue with it."

At the start of trial, the State offered six exhibits as evidence of Wilson's prior DWI convictions. Wilson objected to Exhibits 1, 2, and 3 on the grounds that each exhibit did not include a copy of the signed judgment. The trial court admitted all six exhibits as evidence of Wilson's prior DWI convictions over his objection, and, on this evidence, it found that Wilson was a habitual DWI offender and a prior and persistent offender.

At Wilson's 2023 jury trial, the Sergeant testified as follows, using the AIR to refresh his recollection. The trial court admitted the AIR after Wilson's counsel stated there was "No objection" to its admission. The Sergeant noticed a vehicle driving without license plates or registration, and he pulled over the driver of the vehicle, later identified as Wilson. The Sergeant approached the vehicle and asked Wilson for his driver's license and insurance information. Wilson stated he did not have a driver's license or insurance, and the Sergeant noted a moderate odor of intoxicants coming from inside the vehicle. The Sergeant took Wilson to his patrol vehicle, where the Sergeant noticed a moderate odor of intoxicants on Wilson's breath and that Wilson's eyes were glassy and bloodshot. As the Sergeant was preparing to perform a preliminary PBT on Wilson, Wilson admitted to having drunk three beers. Wilson's PBT result was positive for alcohol. The Sergeant then had Wilson perform the horizontal gaze nystagmus (HGN) and walk-and-turn field sobriety tests. The results of both Wilson's HGN test and walk-and-turn test displayed signs of

3

impairment, and throughout their encounter, the Sergeant noted that Wilson's balance was uncertain and swaying.  The Sergeant then placed Wilson under arrest for DWI and read him his Miranda[3] rights.

The Sergeant searched Wilson's vehicle incident to his arrest, and the search revealed a 12-pack of beer with five beer cans remaining unopened and an open beer in the console that was still cold.  While being transported to the jail, Wilson stated that he had drunk five beers, four in the last hour.  At the jail, the Sergeant asked Wilson to submit to a certified breath test pursuant to Missouri's implied consent law, but Wilson requested time to contact an attorney.  The Sergeant allowed Wilson 20 minutes to contact an attorney and provided him with a telephone book and his cellular telephone, but Wilson was unable to reach an attorney.  After waiting between 20 and 22 minutes, the Sergeant read Wilson the implied consent form again, and Wilson refused the breath test.  At the close of the State's evidence, Wilson moved for an acquittal, which the trial court denied.

Wilson presented testimony from an expert witness in DWI enforcement officer training and field sobriety testing.  The expert witness had reviewed the Sergeant's AIR and the dashboard camera videos of Wilson's field sobriety tests.  The expert witness testified to a variety of errors the Sergeant made in administering the field sobriety tests, and the expert witness concluded that in his opinion the results of the tests were not valid.

At the close of all evidence, Wilson again filed a motion for judgment of acquittal, which the trial court denied.  The jury convicted Wilson of one count of DWI, and the trial court sentenced him to fifteen years in the department of corrections.  This appeal follows.

Discussion

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

Wilson raises five points on appeal, and we address the points in order.

## Point I

In his first point on appeal, Wilson argues the trial court erred in finding him to be a habitual offender because the State failed to present sufficient evidence to prove three of Wilson's prior DWI convictions beyond a reasonable doubt. We disagree.

DWI is a class B misdemeanor. Section 577.010.2(1). However, if the State proves the defendant is a habitual offender, then the DWI offense is enhanced to a class B felony. Section 577.010.2(6)(a). A habitual offender is a person who has been found guilty of five or more intoxication-related traffic offenses (IRTO) committed on separate occasions. Section 577.001(11)(a). This Court reviews a trial court's findings of IRTOs for whether they were supported by substantial evidence. State v. Wheeler, 439 S.W.3d 241, 244 (Mo. App. W.D. 2014). We accept as true all evidence and reasonable inferences supporting the trial court's conclusion, and we disregard contrary facts and inferences. Id. The State has the burden of proving prior IRTOs beyond a reasonable doubt. Id.

The definition of an IRTO includes "driving while intoxicated, driving with excessive blood alcohol content, or driving under the influence of alcohol or drugs in violation of state law, [or] county or municipal ordinance." Section 577.001(15). Further, "driving" is defined as "physically driving or operating a vehicle." Section 577.001(9). The prior convictions for IRTOs must satisfy the version of chapter 577 and the definitions used therein in effect at the time of the *present offense*, not at the time of the prior convictions. State v. Shepherd, 643 S.W.3d 346, 349 (Mo. banc 2022). Accordingly, a court will find an individual to be a habitual offender if the State introduces evidence sufficient to establish beyond a reasonable doubt the defendant has five prior IRTOs,

which, under the current law, is limited to offenses where the defendant was physically driving or operating a vehicle while intoxicated. Section 577.023.1(2); see also Sections 577.001(9), (15).

Here, the State introduced six exhibits to prove Wilson's status as a habitual offender. Wilson challenges only Exhibits 1 through 3. The State concedes on appeal that Exhibit 1 is not sufficient to establish a prior IRTO. Exhibit 1 consisted of a certified docket sheet for two misdemeanor charges for "DWI-alcohol" and driving while revoked, to which Wilson pled guilty in July of 1991 (1991 conviction). The State notes that, in 1991, the definitions in chapter 577 allowed a conviction for DWI *either* for "physically driving or operating" a vehicle *or* for "being in actual physical control of" a vehicle; however, in 1996, chapter 577 was modified to allow a DWI conviction only for "physically driving or operating" a vehicle. Prior DWI convictions based on the defendant being in "actual physical control of" a vehicle do not meet the current definitions and thus do not qualify as an ITRO. Shepherd, 643 S.W.3d at 350 ("prior offense that was based solely on the defendant being in physical control of a vehicle while intoxicated cannot qualify as an IRTO").

Exhibit 1 contained no description of the conduct underlying the charge of "DWI-alcohol" and thus the charge could have stemmed solely from "being in actual physical control of a motor vehicle," which met the definition for DWI in 1991 but not in 2017. Without more information, the certified docket sheet in Exhibit 1 does not prove the 1991 conviction was a qualifying IRTO.

Nevertheless, both Exhibits 2 and 3 were sufficient to establish Wilson's prior convictions for IRTOs. The State can prove prior IRTOs with evidence including, but not

6

limited to, certified records from "the Missouri uniform law enforcement system, including criminal history records from the central repository or records from the driving while intoxicated tracking system (DWITS) maintained by the Missouri state highway patrol, or the certified driving record maintained by the Missouri department of revenue."  Section 577.023.4; see also State v. Pylypczuk, 527 S.W.3d 96, 100-01 (Mo. App. W.D. 2017) (foundational requirements apply to admission of State records).  Further, a certified judgment or docket sheet can meet the State's burden of proof if it contains information sufficient to establish the necessary elements of the defendant's prior conviction for DWI or driving with an elevated BAC.  See State v. Hurd, 877 S.W.2d 644, 646 (Mo. App. W.D. 1994) (docket sheet indicating defendant pleaded guilty to charge of DWI was sufficient evidence to prove defendant had prior conviction for IRTO).

Exhibit 2 consisted of certified[4] copies of the unsigned judgment, the Substitute Information, and the docket sheet.  Count I of the Substitute Information charged Wilson with operating a motor vehicle on a public highway under the influence of alcohol.  Both the docket sheet and the unsigned judgment reflected that Wilson pleaded guilty in 1996 to Count I, "DWI-Alcohol," (1996 conviction) and was sentenced accordingly.  Considered together, these three documents are sufficient to prove the 1996 conviction qualified as an IRTO.  See Section 577.023; Section 577.001(15) (IRTO includes driving under influence of alcohol); see also State v. Wilson, 684 S.W.2d 544, 545, 547 (Mo. App. S.D. 1984) (judgment and docket sheet considered together established sufficient facts to support prior

---

[4] Wilson argues for the first time in his Reply Brief that the certification was not proper, in that none of the documents contain a visible seal of the court or a private seal of the clerk, as required by Section 490.130. We will not consider arguments raised for the first time in the Reply Brief.  State v. Renfrow, 495 S.W.3d 840, 845 (Mo. App. W.D. 2016).  Moreover, we note that, while difficult to see on a photocopy, this Court is able to distinguish a partial seal on both the docket sheet and the substitute information of Exhibit 2.

conviction; noting courts can consider entire record of prior proceedings to establish sufficiency of qualifying IRTO, not merely judgment).

Similarly, Exhibit 3 was a certified[5] copy of the record of Wilson's 2002 DWI conviction (2002 conviction). The certified record consisted of the docket sheet, the indictment, and the amended judgment, which, instead of bearing the judge's signature, included the judge's typewritten name. The indictment alleged Wilson operated a motor vehicle while under the influence of alcohol, and the docket sheet and judgment both indicated Wilson pleaded guilty to the charge of DWI and was sentenced accordingly. Considering the certified record in its entirety, the State presented sufficient evidence to establish that Wilson's 2002 conviction qualified as an IRTO. See Section 577.023; Section 577.001(15) (IRTO includes driving under influence of alcohol); see also Wilson, 684 S.W.2d at 545, 547.

Exhibits 2 and 3 combined with Exhibits 4, 5, and 6 were sufficient to demonstrate beyond a reasonable doubt that Wilson was a habitual offender for the purpose of enhancing his sentence under Section 577.010.2(6)(a), in that he had been found guilty of five or more IRTOs committed on separate occasions. The trial court did not err in finding Wilson was a habitual offender.

Point denied.

Point II

In his second point on appeal, Wilson argues the trial court erred in admitting his statement that he did not have a valid driver's license or insurance because this was

---

[5] As with Exhibit 2, Wilson argues for the first time in his Reply Brief that the certification for Exhibit 3 was not proper, in that the clerk's certification was dated August 30, 2017, which was fifteen years after the 2002 conviction. We will not consider arguments raised for the first time in the Reply Brief. Renfrow, 495 S.W.3d at 845.

8

evidence of prior bad acts that was not legally or logically relevant to the current charge and was so prejudicial as to deny him a fair trial. We disagree.

Wilson concedes that Point II is not preserved for appeal because he did not renew his objection to the admission of this testimony at trial, but he requests plain-error review under Rule 30.20. See State v. Whitaker, 405 S.W.3d 554, 558 (Mo. App. E.D. 2013) (when trial court denies pre-trial motion to suppress, to preserve issue for appeal, defendant must renew objection at trial when evidence is presented). Under plain-error review, we will reverse only if a plain error affecting substantial rights results in manifest injustice or a miscarriage of justice. State v. McCleary, 423 S.W.3d 888, 896 (Mo. App. E.D. 2014). We review for plain error using a two-step analysis. First, we determine whether the record facially establishes substantial grounds to believe plain error occurred, which is error that is evident, obvious, and clear, resulting in manifest injustice or a miscarriage of justice. Id. If so, we may then consider whether the error actually resulted in manifest injustice or a miscarriage of justice. Id. Plain-error review requires that the alleged error have a decisive effect on the verdict. Id.

To be admissible, evidence must be both logically and legally relevant. State v. Blurton, 484 S.W.3d 758, 777 (Mo. banc 2016). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." Id. (citation omitted). Evidence is legally relevant if its probative value outweighs its costs, such as unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness. Id.; State v. Anderson, 76 S.W.3d 275, 276 (Mo. banc 2002). Even if evidence is logically relevant, it will only be admissible if it is also legally relevant. Id.

The general rule is that evidence of uncharged misconduct and prior convictions is inadmissible to show a defendant's propensity to commit such crimes, for fear that the jury would convict the defendant based on the propensity rather than on the evidence presented to support the particular crime charged. State v. Adams, 443 S.W.3d 50, 55 (Mo. App. E.D. 2014). Although a criminal defendant has the right to be tried for only the charged offense, evidence of prior bad acts may be admissible to establish motive, intent, the absence of mistake or accident, a common scheme or plan, the identity of the defendant on trial, or a coherent picture of the overall events. State v. Miller, 372 S.W.3d 455, 473 (Mo. banc 2012). "Generally, acts, statements, occurrences, and the circumstances forming part of the main transaction may be shown in evidence … where they precede the offense immediately or by a short interval of time and tend, as background information, to elucidate a main fact in issue." State v. Madrigal, 652 S.W.3d 758, 774 (Mo. App. E.D. 2022) (citation omitted).

Here, Wilson's statement that he did not have either a driver's license or insurance, in response to the Sergeant's request for them, is part of the background information demonstrating how the Sergeant had the opportunity to smell intoxicants in Wilson's vehicle. See id. As the trial court explained, without an explanation for their conversation, the Sergeant's testimony that he smelled intoxicants in Wilson's vehicle was in a void. State v. Morgan, 366 S.W.3d 565, 581 (Mo. App. E.D. 2012) (evidence of uncharged crimes can be admissible to present complete and coherent picture of events that transpired).

Moreover, under our plain-error review, Wilson has not demonstrated that the Sergeant's testimony that Wilson was driving without a driver's license and insurance had

a decisive effect on the jury's verdict finding Wilson guilty of DWI, which is necessary to prove that the alleged plain error has resulted in manifest injustice. See McCleary, 423 S.W.3d at 896; Morgan, 366 S.W.3d at 582. Rather, the jury considered evidence of Wilson's statements he had consumed five beers before and while driving, his glassy and bloodshot eyes, the odor of intoxicants, several failed field sobriety tests, and his refusal to take the breath test, all of which constitutes evidence from which a jury could conclude Wilson was driving while intoxicated. See State v. Burks, 373 S.W.3d 1, 4 (Mo. App. S.D. 2012); see also State v. Baker, 499 S.W.3d 730, 734 (Mo. App. W.D. 2016) ("[r]efusal to take a breathalyzer test can constitute evidence from which a reasonable inference can be drawn that the driver was intoxicated at the time of the operation of his vehicle").

The trial court did not err, plainly or otherwise, in admitting evidence that Wilson was driving without a driver's license or insurance.

Point denied.

## Point III

In his third point on appeal, Wilson argues the trial court plainly erred in denying the claim in his 2018 motion to suppress that challenged the admission of portions of the AIR that included statements Wilson made during his arrest in response to questions from law enforcement after he had requested to speak to an attorney.

Wilson acknowledges that this argument is not preserved for appellate review because, when the State offered the AIR into evidence, his counsel stated "No objection." He requests plain-error review under Rule 30.20. The State, however, argues that by stating "No objection" to the AIR, Wilson has waived appellate review entirely, including

11

plain-error review. We agree with the State. Wilson has waived appellate review on this point, and we dismiss it.

"Generally, an announcement of 'no objection' amounts to an affirmative waiver of appellate review of the issue." State v. Collins, 188 S.W.3d 69, 77 (Mo. App. E.D. 2006); State v. Jones, 619 S.W.3d 138, 153 (Mo. App. E.D. 2021) (affirmative waiver of appellate review also waives plain-error review). Courts may find an exception to this waiver when there is a "mutual understanding" between the parties and the trial court that the objecting party did not intend to waive his or her prior objection by announcing "no objection." State v. Baker, 103 S.W.3d 711, 716-17 (Mo. banc 2003). Evidence of a mutual understanding exists where the objecting party has previously requested and received a continuing objection, and the record evinces a mutual understanding that the statement "no objection" means "no further objection." Id.

Here, however, no such mutual understanding exists. Wilson did not request or receive a continuing objection to admission of the AIR on the basis that it contained information obtained through interrogation after Wilson requested an attorney. See State v. McWhorter, 240 S.W.3d 761, 763 (Mo. App. S.D. 2007) (request for continuing objection is integral part of narrow mutual-understanding exception set forth in Baker). Moreover, although Wilson now argues there was a mutual understanding that he did not intend to waive his objection to the AIR on the grounds that it included statements he made in response to interrogation after he requested an attorney, his voluntary dismissal of a substantially identical claim raised in his 2022 motion to suppress belies any argument of a mutual understanding on this issue. Notably, Wilson argued in both his 2018 motion to suppress and his 2022 motion to suppress that the trial court should suppress any statements

12

Wilson made in response to questions from the AIR after he requested an attorney; however, following the evidentiary hearing on the 2022 motion to suppress, he voluntarily withdrew this specific claim from the 2022 motion to suppress. In light of his contradictory treatment of this same objection to the AIR in the 2018 motion to suppress and the 2022 motion to suppress, and his failure to make a continuing objection to admission of the AIR on this ground, the record here does not support Wilson's argument that the mutual-understanding exception should annul his affirmative waiver of appellate review.

We find Wilson waived appellate review of this point, and we decline to grant our discretionary plain-error review.

Point dismissed.

### Point IV

In his fourth point on appeal, Wilson argues the trial court erred in overruling the portion of his 2018 motion to suppress challenging the admission of the results of the PBT because the evidence was improperly admitted as proof of his blood alcohol content (BAC). We disagree.

We review the trial court's ruling on a motion to suppress for whether the decision is supported by substantial evidence. State v. Scherrer, 673 S.W.3d 899, 914 (Mo. App. E.D. 2023). Upon review of the entire record, we will reverse only if the trial court's ruling is clearly erroneous, meaning that we are left with a firm and definite impression that the trial court has made a mistake. Id. Likewise, the trial court has broad discretion to admit or exclude evidence, and we review that decision for an abuse of discretion. State v. Roux, 554 S.W.3d 416, 418 (Mo. App. S.D. 2017). An abuse of discretion occurs only where the

13

ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful consideration. Id.

Because the trial court's ruling on a motion to suppress is interlocutory, the moving party must reiterate his or her objection at trial in order to preserve the objection for review on appeal. State v. Courtney, 589 S.W.3d 49, 53 (Mo. App. E.D. 2019). Wilson concedes that this point is not preserved for appellate review because he did not reiterate his objection at trial to the admission of the PBT result, and he requests plain-error review under Rule 30.20. As stated above, to succeed under plain-error review, Wilson must establish both substantial grounds to believe plain error occurred and that the alleged error actually resulted in manifest injustice or a miscarriage of justice. McCleary, 423 S.W.3d at 896.

Section 577.021.3 provides that chemical tests, such as PBTs, shall be admissible as evidence of probable cause to arrest a driver on suspicion of DWI but shall not be evidence of the driver's BAC. Accordingly, courts have typically held that, while evidence that a PBT was positive for alcohol is admissible as evidence of the officer's probable cause to arrest a defendant, the specific numerical value of the test is not admissible. Acevedo v. Dir. of Revenue, 662 S.W.3d 340, 342 (Mo. App. S.D. 2023). Likewise, the State may not use a positive PBT to prove intoxication. State v. Morgenroth, 227 S.W.3d 517, 522 (Mo. App. S.D. 2007) (results of PBT are too unreliable to be used to prove intoxication). Where probable cause for a DWI arrest is not at issue, it can be error to admit evidence of a positive PBT, because it appears then that the PBT is admitted as proof of intoxication. Id. (finding error in admission of evidence of PBT when probable cause not at issue and State informed jury they could consider defendant's failure of field sobriety tests, including PBT, as proof of intoxication).

Here, whether the Sergeant had probable cause to arrest Wilson on suspicion of DWI was not at issue, but the trial court still allowed the State to introduce evidence of Wilson's positive PBT. The Sergeant testified that he based his conclusion that Wilson was impaired in part of the positive result of the PBT, and the State reiterated the positive PBT was one of many indicators of impairment during closing arguments. Nevertheless, under our plain-error review, the erroneous admission of a positive PBT does not necessarily result in manifest injustice or a miscarriage of justice, requiring reversal. Where the improperly admitted evidence of intoxication is cumulative to other evidence of intoxication and is not highlighted, plain error does not result. State v. Yarbrough, 332 S.W.3d 882, 884-85, 887 (Mo. App. S.D. 2011) (no plain error from officer's testimony that PBT was positive for alcohol when that reference was "dwarfed" by testimony that defendant had odor of alcohol, slurred speech, and bloodshot eyes, HGN test indicated intoxication, and defendant admitted to drinking). While the trial court here should not have admitted the positive PBT for a purpose other than establishing probable cause for Wilson's arrest, the references to the positive PBT were brief and not highlighted, and they were part of a long list of indications of intoxication, including Wilson's admission to drinking five beers, an odor of intoxicants, his glassy and bloodshot eyes, signs of impairment on the HGN and walk-and-turn tests, uncertain and swaying balance, and his refusal to take the breath test.

While Wilson relies on State v. Duncan, 27 S.W.3d 486, 488-89 (Mo. App. E.D. 2000), to argue prejudice resulted from the admission of the PBT evidence, we note that in Duncan, unlike here, the issue was preserved for appellate review and thus the defendant was only required to prove prejudice, not manifest injustice. Here, to justify reversal under

15

plain-error review, Wilson must prove, not ordinary prejudice, but manifest injustice or a miscarriage of justice, which occurs when there is a reasonable probability that the verdict would have been different had the error not occurred. State v. Robertson, 664 S.W.3d 774, 779 (Mo. App. E.D. 2023). Under the circumstance here and the plethora of evidence supporting a finding of intoxication, Wilson cannot meet this burden.

The trial court did not plainly err in overruling Wilson's 2018 motion to suppress and in admitting the results of the PBT.

Point denied.

Point V

In his fifth and final point on appeal, Wilson argues the trial court erred in overruling his motion for judgment of acquittal at the close of evidence because the State failed to present sufficient evidence that Wilson was under the influence of alcohol at the time he operated the vehicle. We disagree.

We review challenges to the sufficiency of the evidence supporting a criminal conviction for whether there is sufficient evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt of each of the essential elements of the crime. State v. Knox, 604 S.W.3d 316, 319-20 (Mo. banc 2020). We view the facts and inferences therefrom in the light most favorable to the verdict, and we reject all contrary evidence and inferences. Id. We do not act as a super-juror but will defer to the fact-finder's determinations regarding the credibility of witnesses and the weight of evidence, acknowledging that the trier of fact may believe all, some, or none of the witnesses' testimony. State v. Nash, 339 S.W.3d 500, 509 (Mo. banc 2011).

16

"A person commits the crime of 'driving while intoxicated' if he or she operates a motor vehicle while in an intoxicated or drugged condition." Section 577.010.1. Thus, to sustain a conviction, the State must prove through direct or circumstantial evidence both that the defendant was intoxicated and that the defendant operated a vehicle in this condition. State v. Lopez, 539 S.W.3d 74, 78 (Mo. App. E.D. 2017). Circumstantial evidence is evidence that gives rise to a logical inference that the fact exists. Id. In considering the sufficiency of the evidence supporting a criminal conviction, we give circumstantial evidence the same weight as direct evidence. Id. "[T]he State may prove intoxication through circumstantial evidence and the testimony of witnesses who had a reasonable opportunity to observe the defendant." Id.; State v. Putney, 473 S.W.3d 210, 215 (Mo. App. E.D. 2015). The State is not required to produce the results of a chemical test to prove intoxication. Putney, 473 S.W.3d at 215-16.

Here, Wilson does not challenge that he operated a vehicle, and the only issue is whether he was intoxicated. The record here supports an inference of intoxication. Wilson admitted to drinking five beers that evening, including four in the last hour before his arrest. The Sergeant testified, as reflected in his AIR report admitted without objection, that he noticed a moderate odor of intoxicants on Wilson's breath; Wilson's eyes were glassy and bloodshot; Wilson displayed multiple signs of impairment on his HGN and walk-and-turn field sobriety tests; that, throughout the walk-and-turn test, Wilson's balance was uncertain and swaying; and Wilson refused to take a breath test. These facts were sufficient evidence from which a reasonable jury could find that Wilson was operating his vehicle while intoxicated. See Lopez, 539 S.W.3d at 79 (admission of drinking, odor of alcohol, slurred speech, swaying, eyes that were glassy, watery, and bloodshot, and failed field tests were

17

sufficient evidence to prove intoxication); <u>Baker</u>, 499 S.W.3d at 734 ("[r]efusal to take a breathalyzer test can constitute evidence from which a reasonable inference can be drawn that the driver was intoxicated at the time of the operation of his vehicle"); <u>Burks</u>, 373 S.W.3d at 4 (admission of drinking, odor of alcohol, swaying, failed field tests, and glassy, bloodshot eyes were sufficient evidence to prove intoxication).

Although Wilson presented alternative explanations for the Sergeant's observations, we review merely to determine whether sufficient evidence exists from which a jury could find Wilson guilty beyond a reasonable doubt of all the essential elements of the crime of DWI, and we reject Wilson's counter inferences. <u>See</u> <u>Knox</u>, 604 S.W.3d at 319-20; <u>Lopez</u>, 539 S.W.3d at 79; <u>Putney</u>, 473 S.W.3d at 216. We do not reweigh the evidence or substitute our judgment for that of the jury's. <u>See</u> <u>Nash</u>, 339 S.W.3d at 509; <u>Putney</u>, 473 S.W.3d at 216.

Because there was sufficient evidence supporting the conviction, the trial court did not err in denying Wilson's motion for judgment of acquittal and in entering judgment on the jury's guilty verdict.

Point denied.

Conclusion

The judgment and sentence of the trial court are affirmed.

_____
Gary M. Gaertner, Jr., J.

Lisa P. Page, P.J., and
Angela T. Quigless, J., concur.